# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| _____ | : | |
| WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | : : : | |
| | : | |
| Plaintiff, | : | C.A. No. 18-1229-CFC |
| | : | |
| v. | : | |
| | : | |
| MAVENIR, INC. F/K/A XURA, INC., PHILIPPE TARTAVULL, HENRY R. NOTHHAFT, SUSAN D. BOWICK, JAMES BUDGE, NICCOLO DE MASI, MATTHEW A. DRAPKIN, DORON INBAR, and MARK C. TERRELL, | : : : : : : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**DEFENDANTS' COMBINED (I) ANSWERING BRIEF IN OPPOSITION TO WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL AND (II) OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL AS <u>COUNSEL TO THE PUTATIVE CLASS</u>**

John L. Reed (I.D. No. 3023)
Ethan Reed (I.D. No. 5813)
Peter H. Kyle (I.D. No. 5918)
Harrison Carpenter (I.D. No. 6018)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE 19801
(302) 468-5700

*Attorneys for Defendants Mavenir, Inc., Philippe Tartavull, Henry R. Nothhaft, Susan D. Bowick, James Budge, Niccolo de Masi, Doron Inbar, and Mark C. Terrell*

DATED: March 15, 2019

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND...........................................................................................4

A.    Labaton Hires The Man Who Holds The Keys To The Defendants' Castle ......................4

B.    Wayne County Files This Copycat Action "Based On" The "Investigation"
      Of Its Conflicted Counsel ...................................................................................5

C.    Labaton Fails To Adequately Address Its Conflict ..........................................................7

ARGUMENT .....................................................................................................................8

I.    MR. FARRELL HAD A DISQUALIFYING CONFLICT OF INTEREST
      AS A RESULT OF HIS PRIOR REPRESENTATION OF MAVENIR
      AND CERTAIN INDIVIDUAL DEFENDANTS IN *IN RE XURA* ...............................8

II.   THE CONFLICT IS IMPUTED TO LABATON: AN ETHICAL WALL
      WAS NEITHER SUFFICIENT NOR PUT IN PLACE IN TIME ................................10

III.  WAYNE COUNTY'S LAWSUIT IS FRUIT OF A POISONOUS TREE
      AND IT IS AN IMPROPER AND INADEQUATE LEAD PLAINTIFF ......................13

      A.    Wayne County Fails The Typicality Requirement ...............................................13

      B.    Wayne County Fails The Adequacy Requirement ...............................................14

      C.    Defendants Have Standing To Present Facts And Argument Ignored
            By Wayne County.................................................................................................15

IV.   WAYNE COUNTY'S NEW COUNSEL IS SIMILARLY CONFLICTED..................17

V.    THIS ACTION, AT A MINIMUM, CANNOT PROCEED WITHOUT
      DISCOVERY INTO THE CONFLICTS AT ISSUE....................................................18

CONCLUSION................................................................................................................20

WEST\285631102.4

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                  <u>PAGE(S)</u>

*American Roller Co. v. Budinger*,
    513 F.2d 982 (3d Cir. 1975) ........................................................................ 10, 12

*Apeldyn Corp. v. Samsung Elecs.. Co.*,
    660 F. Supp. 2d 557 (D. Del. 2009) ................................................................9

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
    844 F. Supp. 2d 498 (S.D.N.Y. 2012) .................................................. 14, 15, 16

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines Inc.*,
    2009 WL 1811067 (D. Del. June 18, 2009) ................................................ 13, 14

*Del-Chapel Assocs. v. Ruger*,
    2000 WL 488562 (Del. Ch. Apr. 17, 2000) .......................................................12

*Emle Indus., Inc., v Patentex, Inc.*,
    478 F.2d 562 (2d Cir. 1973) ..........................................................................11

*Enzo Life Sciences, Inc. v. Adipogen Cop.*,
    2013 WL 613791 (D. Del. Nov. 20, 2013) .........................................................12

*Eon Corp. IP Holdings LLC v. Flo TV Inc.*,
    2012 WL 4364244 (D. Del. Sept. 24, 2012) ........................................... 8, 9, 11, 18

*Freeman on behalf of Tesla, Inc. v. Musk*,
    324 F.R.D. 73 (D. Del. 2018) .................................................................. 17, 18

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .................................................................. 15, 16

*In re Herley Indus. Inc.*,
    2010 WL 176869 (E.D. Pa. Jan. 15, 2010) .......................................................17

*In re Horsehead Holding Corp. Sec. Litig.*,
    2017 WL 5188057 (D. Del. Nov. 9, 2017) ........................................................17

*In re Merck & Co., Inc. Sec. Litig.*,
    432 F.3d 261 (3d Cir. 2005) ...........................................................................18

*Intellectual Ventures I LLC v. Checkpoint Software Techs., Ltd.*,
    2011 WL 2692968 (D. Del. June 22, 2011) .......................................................11

ii

*Madukwe v. Del. State Univ.*,
    552 F. Supp. 2d 452 (D. Del. 2008) ....................................................................8

*Nemours Found. v. Gilbane, Aetna, Fed. Ins.*,
    632 F. Supp. 418 (D. Del. 1986) ..................................................................9, 11

*Tolliver v. Trinity Par. Found.*,
    2016 WL 4071954 (D. Del. July 28, 2016) ........................................................9

*Vandevelde v. China Nat. Gas, Inc.*,
    277 F.R.D. 126 (D. Del. 2011) .........................................................................14

*Wigginton v. Advance Auto Parts, Inc.*,
    2018 WL 5729733 (D. Del. Nov. 2, 2018) .......................................................13

## RULES and STATUTES

D. Del. LR 83.6(d) ....................................................................................................9

Federal Rule of Civil Procedure 23.......................................................... 13, 15, 16

Model Rules of Professional Conduct Rule 1.7........................................................10

Model Rules of Professional Conduct Rule 1.9....................................................9, 10

Defendants Mavenir, Inc. ("Mavenir" or the "Company"), Philippe Tartavull ("Tartavull"), Henry R. Nothhaft ("Nothhaft"), Susan D. Bowick, James Budge ("Budge"), Niccolo de Masi, Doron Inbar, and Mark C. Terrell (collectively, the "Defendants")[1] seek an order disqualifying Rosenthal, Monhait & Goddess, P.A., Thornton Law Firm LLP and Kirby McInerney LLP, from representing Wayne County Employees' Retirement System ("Wayne County") and Utah Retirement Systems ("URS") as lead plaintiffs, or the putative class in this matter, and, on the same grounds, oppose the Motion For Appointment As Lead Plaintiff And Approval Of Selection Of Lead Counsel (the "Lead Plaintiff Motion") by Wayne County.

## PRELIMINARY STATEMENT

This action arises from one of the most egregious violations of an attorney's ethical obligations to his former clients. Just weeks before this action was commenced in Wayne County's name, Mr. Derrick Farrell ("Mr. Farrell"), former counsel to Defendants Mavenir, Tartavull, Nothhaft, Budge, and non-party Siris Capital Group, LLC ("Siris"), joined the small Wilmington office of the law firm (Labaton Sucharow LLP ("Labaton") that "investigated," drafted, and signed Wayne County's complaint. The circumstances of the commencement of this suit are highly suspicious and Defendants—whose confidential and privileged information Mr. Farrell was armed with—cannot just "look the other way." Nor should the Court.

Mr. Farrell was the lead non-partner attorney for the defense in *Obsidian Management LLC v. Xura, Inc.*, C.A. No. 12698-VCS (Del. Ch.) (the "Appraisal Action"), and *Obsidian Management LLC v. Tartavull, et al.*, C.A. No. 2018-0232-JRS (Del. Ch.) (the "Fiduciary Duty

---

[1] Defendant Matthew A. Drapkin is separately represented.

1

Action" and together with the Appraisal Action, the "Chancery Actions"),[2] from which the same facts alleged in this action were drawn. Mr. Farrell logged _1,273.40 hours_ representing his clients and was heavily involved in all aspects of the representation. Mr. Farrell then joined his current firm, Labaton, in July 2018. It is easily inferable that there is no coincidence Labaton filed this action for Wayne County on August 10, 2018. Labaton never obtained written consent from Mr. Farrell's former clients and never even attempted to put in place the ethical wall mandated by the rules of professional conduct before investigating and filing this action.

The timing of Wayne County's action, and Labaton's conduct after being alerted to its conflict, reveal Defendants' concerns to be manifest. Wayne County's complaint (the "Complaint") appears to be modeled after public submissions filed in the Chancery Actions in August 2017, November 2017, and January 2018. Wayne County did not file its Complaint until _August 2018_. The Complaint even concedes that it is "based upon, inter alia, the investigation of [its] counsel." (Compl., Preamble.) What is more, when the undersigned counsel demanded that Labaton withdraw, the firm never responded in writing, took weeks purportedly to "investigate," and then, with no notice to Defendants, withdrew a lead plaintiff/lead counsel motion that Labaton had filed (for some unknown reason, on behalf of URS). Labaton never provided clarity into the circumstances surrounding the filing of this litigation, and, tellingly, never provided a certification of compliance with the rules of professional conduct governing their conflicted actions. Defendants are now faced with the prospect of defending an action that exists only because of the disloyalty of one of their former attorneys. This injustice cannot proceed.

---

[2] These actions have been consolidated and re-captioned as _In re Xura, Inc. Stockholder Litigation_, C.A. No. 12698-VCS (hereinafter, "_In re Xura_"). Additionally, on March 7, 2019, another putative class action based on the same facts was consolidated into _In re Xura_. (_In re Xura_, D.I. 340.) Trial in that case is scheduled for October 7–15, 2019. (_Id._)

Put simply, Wayne County cannot serve as an adequate class representative, and its lawyers cannot represent any lead plaintiffs or the putative class in this action, because they are incurably tainted by Mr. Farrell's conflict of interest. The Court should therefore deny Wayne County's Lead Plaintiff Motion and grant Defendants' Motion to Disqualify.[3]

---

[3] This applies equally to URS, which was another one of Labaton's clients in this action.

3

## FACTUAL BACKGROUND

Wayne County's "theory" underlying this case focuses on the process by which Mavenir was acquired by affiliates of Siris in a merger that closed on August 19, 2016.  Specifically, Wayne County alleges that, in connection with the merger, Mavenir issued proxy statements that omitted material information, particularly concerning communications between Tartavull and Siris during the sale process.  The same claims are being pursued in *In re Xura*.

Although Mr. Farrell's conflict obviously was imputed to Labaton, the firm never appropriately handled this serious conflict, and, as such, the entirety of this action is permanently corrupted.

**A.**    **Labaton Hires The Man Who Holds The Keys To The Defendants' Castle**

Mr. Farrell played a central role in the defense of *In re Xura* before departing DLA Piper LLP (US) ("DLA") in July 2018 for Labaton.  Mr. Farrell participated in document collection and custodian interviews.  (Aff. of John L. Reed ("Reed Aff.") ¶5.)  He assisted in managing document reviews and productions.  (*Id.*)  Mr. Farrell reviewed and signed off on Mavenir and Siris' privilege logs.  (*Id.*)  He drafted discovery motions, interrogatory responses, the Company's pretrial brief, and the pretrial order.  (*Id.*)  He presented oral argument.  (*Id.*)  He also took the deposition of Carl Berg, the owner of the petitioner and a plaintiff in the Chancery Actions, Obsidian Management LLC ("Obsidian"), and he defended or participated in other depositions, including those of Tartavull, Nothhaft, and the parties' appraisal experts, among others.  (*Id.* ¶6.)  In total, Mr. Farrell billed <u>*1,273.40 hours*</u> in the Chancery Actions.  (*Id.* ¶7.)[4]  In sum, Mr. Farrell had <u>*unlimited*</u> access to his clients' confidences and confidential and privileged information.

---

[4] If required, counsel will provide for *in camera* review, a record reflecting all of Mr. Farrell's time entries.

**B.**   **Wayne County Files This Copycat Action "Based On" The "Investigation" Of Its Conflicted Counsel**

Labaton filed this litigation just weeks after Mr. Farrell joined that firm.  The timing of Labaton's filing is highly suspicious.  And the suspiciousness of this action is heightened by the fact that (i) no major event occurred in the Chancery Actions in the months preceding Mr. Farrell's change in firms and (ii) a potential road map for this action had been in the public, at least seven months beforehand.

Obsidian's spin on the discovery in the Chancery Actions was laid out in full in its Pre-Trial Brief in the Appraisal Action, filed publicly on January 26, 2018 ("OPTB," Ex. A hereto.) In a section entitled "Xura's Stockholders Lacked Material Information," Obsidian listed the same defects now claimed by Wayne County, asserting that:   "[T]he Proxy disclosed certain communications between Tartavull and Siris but omitted other, material ones … [including] any reference to the February 24 meeting in which Tartavull and Siris discussed the transaction price, deal timing and potential acquisitions."  (OPTB at 39; *compare* Compl. ¶59 (same).)  Obsidian also harped that, "Xura's disclosures never mentioned Francisco Partners."  (OPTB at 39–40; *compare* Compl. ¶63 (same).)  Obsidian further claimed that "the Proxy contained a misleading description of the Strategic Committee" (OPTB at 40; *compare* Compl. ¶¶5, 61 (same)), and that the supplemental proxy "misleadingly" "emphasized that Xura and Siris had not reached any agreements about the continued employment of the executive officers" (OPTB at 40; *compare* Compl. ¶¶6, 65 (same)).  Mavenir's former stockholders had access to this ostensibly ready-made list for nearly seven months before this action was filed, and yet no one came forward.  That is, until Mr. Farrell left DLA and joined Labaton.

5

Indeed, the allegations underlying Wayne County's Complaint were made public well before even the Pre-Trial Brief of Obsidian was filed. In the public version of its Second Motion to Compel ("MTC, Ex. B hereto), filed _one year_ before Wayne County's Complaint, Obsidian averred that "Mr. Tartavull and Siris discussed the transaction process and Xura's business by text." (MTC at 10–11.) And in its subsequent Motion for an Adverse Inference ("MAI," Ex. C hereto), the public version of which was filed on November 20, 2017, Obsidian contended that "Tartavull knew that, absent a deal, the Board would likely replace him" and he therefore "had extensive in-person, telephonic, email and text communications with Siris leading up to the Merger … [that] were never publicly disclosed." (MAI ¶¶2, 4.) The MAI went on to aver that "Tartavull told Baker that Siris should offer $28 per share" in a meeting with Siris' representative on February 24, 2016, and that "the proxy statement contained nothing about the meeting." (_Id._ ¶15.) In other words, by no later than January 26, 2018, Mavenir's former stockholders, including Wayne County, had access to all the pre-packaged information they purportedly needed to make the claims asserted in this action. But nothing happened until August 2018, right after Mr. Farrell left DLA and joined Labaton.

Flowing from its allegations in the Appraisal Action, and with its appraisal case not looking promising, Obsidian repackaged its allegations into the Fiduciary Duty Action against Mr. Tartavull for breach of fiduciary duty for "engaging in improper direct communications with Siris, which undermined Xura's leverage in negotiations and led to Xura's sale at an unfair price," and "by causing Xura to issue proxy materials that were materially misleading and contained material omissions." (Ex. D hereto, ¶¶121–22.)[5] Obsidian commenced the Fiduciary Duty Action on

---

[5] Obsidian had asserted a second claim against Siris and two of its principals, but on December 10, 2018, the Court of Chancery dismissed that claim. (_In re Xura_, D.I. 284.) That claim is now being

WEST\285631102.4

March 30, 2018, publicly reiterating the same allegations of misconduct alleged since the early stages of its Appraisal Action, as seen above. Again, nothing happened. None of Wayne County's peer stockholders came forward. April, May, June, and July came and went without any needle-moving public filings in *In re Xura*. Then Mr. Farrell joined Labaton. And only then did Wayne County, through Mr. Farrell's new firm, file this class action, re-stating allegations made in filings in the Appraisal Action.

## C.   Labaton Fails To Adequately Address Its Conflict

On November 30, 2018, DLA Piper objected to Labaton's continued representation in this case. (Reed Aff. ¶10.) Labaton never responded in writing. Instead, over the next almost two months—why Labaton needed so much time to "investigate" is a mystery—it orally sought more time to "investigate" the issue and attempted to seek work-arounds from Defendants. (*Id*.) After counsel for the Defendants explained that they would not agree to any work-around, and negotiated a case schedule incorporating a potential motion to disqualify, Labaton went dark. After repeated follow-up emails and telephone calls to Labaton (*id*.), on January 29, 2019, Labaton withdrew a lead plaintiff/lead counsel motion the firm had filed on behalf URS (mysteriously instead of the named plaintiff, Wayne County) (D.I. 22), and withdrew its appearance as counsel to Wayne County and URS on February 8, 2019 (D.I. 27). Wayne County's new counsel entered their appearances on February 7, 2019 (D.I. 23) and filed the Lead Plaintiff Motion on February 15, 2019 (D.I. 28).

---

asserted in another class action that was consolidated into *In re Xura*, and is the subject of pending motions to dismiss.

WEST\285631102.4

**ARGUMENT**

The fact pattern set forth above is extremely concerning. Wayne County would like to claim that Defendants should not have a voice in the matter, but this is not an ordinary lead plaintiff motion, nor is it an ordinary set of events. Rarely does an attorney switch sides, and contemporaneously with that shift, appear to bring about the filing of an action against his former clients which is substantially the same as the one he previously defended. There is no debate Mr. Farrell is conflicted, and that this conflict is imputed to Labaton. Labaton's withdrawal, furthermore, does not cure the defect. This action, Wayne County and Wayne County's new counsel, are irreparably tainted by the improper conduct of Wayne County's former counsel. Permitting this action to go forward will permit a poisonous tree to bear fruit. Wayne County cannot serve as an adequate class representative and Wayne County's counsel must be disqualified from representing any lead plaintiff or the putative class.

**I.      MR. FARRELL HAD A DISQUALIFYING CONFLICT OF INTEREST AS A RESULT OF HIS PRIOR REPRESENTATION OF MAVENIR AND CERTAIN INDIVIDUAL DEFENDANTS IN *IN RE XURA*_____**

To advance the vital interests in protecting the integrity of the bar, eliminating conflicts of interest and protecting confidential communications between attorneys and their clients, courts have "the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from representation." *Madukwe v. Del. State Univ.*, 552 F. Supp. 2d 452, 457 (D. Del. 2008) (citing *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)). As this Court has highlighted, "[b]ecause '[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important'… a court may disqualify an attorney 'for failing to avoid even the appearance of impropriety.'" *Eon Corp. IP Hldgs. LLC v. Flo TV Inc.*, 2012 WL 4364244, at *2 (D. Del. Sept. 24, 2012) (quoting

*Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992)). Further, this Court has underscored the importance of "preventing 'even the potential that a former client's confidences and secrets may be used against him,' to maintain 'public confidence in the integrity of the bar,' and to fulfill a client's rightful expectation of 'loyalty of his attorney in the matter for which he is retained.'" *Id.* at *2 (quoting *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984)).

In furtherance of these goals, the District of Delaware has adopted the Model Rules of Professional Conduct ("MRPC") of the American Bar Association. *See* D. Del. LR 83.6(d); *see also Tolliver v. Trinity Par. Found.*, 2016 WL 4071954, at *2–3 (D. Del. July 28, 2016). In this case, Mr. Farrell had an unmistakable disqualifying interest under MRPC 1.9, in light of his representation of Defendants while he was employed by DLA with respect to matters that were, in substance, identical to this action.

MRPC 1.9 provides, in part, that:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

MRPC 1.9(a). Specifically, a former representation violates MRPC 1.9 when: (1) there is an attorney-client relationship with the former client; (2) the present client's matter is the same matter, or is substantially related to the current matter; (3) the interests of the new client are materially adverse to the former client; and (4) the former client did not consent to the representation after consultation. *See, e.g.*, *Apeldyn Corp. v. Samsung Elecs. Co.*, 660 F. Supp. 2d 557, 561 (D. Del. 2009); *Nemours Found. v. Gilbane, Aetna, Fed. Ins.*, 632 F. Supp. 418, 424 (D. Del. 1986)).

9

There is no dispute that all four elements of MRPC 1.9 have been met. Under MRPC 1.9(a), an attorney must be disqualified when a former representation occurred with respect to the same, or substantially related, action at law as the current representation. *See Am. Roller Co. v. Budinger*, 513 F.2.d 982, 984 (3d Cir. 1975) (disqualifying an attorney if in the course of a prior representation the attorney may have acquired substantially related material). Here, Mr. Farrell represented Mavenir and multiple Defendants in *In re Xura*, and in defense of contentions upon which this action is directly and exclusively based. Mr. Farrell's efforts were not tangential or minor; he had unfettered access to all documents collected by DLA, including privileged communications, engaged in regular direct client contact, assisted in framing case strategy, made binding privilege calls, conducted depositions, and presented argument on behalf of Xura and Siris in the Court of Chancery. There is no doubt Mr. Farrell has a conflict.

## II.   THE CONFLICT IS IMPUTED TO LABATON: AN ETHICAL WALL WAS NEITHER SUFFICIENT NOR PUT IN PLACE IN TIME

Under MRPC 1.10, "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any of them practicing alone would be prohibited from doing so by [MRPC] 1.7 or 1.9 … ." This general rule has one narrow exception when the imputed conflict is based upon MRPC 1.9(a) or (b), which requires *each* the following acts to be taken:

> (i)     the disqualified lawyer is *timely screened* from any participation in the matter and is apportioned no part of the fee therefrom;

> (ii)    *written notice is promptly given* to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and

10

> (iii) *certifications of compliance* with these Rules and with the screening procedures *are provided* to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.

MRPC 1.10(a)(2) (emphasis added).   Since Mr. Farrell joined Labaton, no timely screening occurred, no conflict notice was given, and no certifications of compliance with this rule were sent to Defendants.  (Reed Aff. ¶¶9–11.)

Labaton later claimed to have established an "ethical wall," but such measure was belatedly put in place (if at all) and was plainly inadequate to prevent disclosure of confidential information.[6] Significant harm was done through and by the filing of Complaint prior to any attempt to implement effective screening procedures.[7] Wayne County will no doubt argue that its allegations can be derived from public sources, but this misses the point.  Much more goes into the decision

---

[6] In any event, even when screening mechanisms have been adopted, this Court will consider additional factors to determine whether an entire law firm should be disqualified.  *See, e.g.*, *Intellectual Ventures I LLC v. Checkpoint Software Techs., Ltd.*, 2011 WL 2692968, *14 (D. Del. June 22, 2011); *Eon Corp.*, 2012 WL 4364244, at *5; *Nemours Found.*, 632 F. Supp. at 428-30. Those additional factors include the size of the law firm, the nature and degree of the prior involvement of the tainted attorney, the stage of the litigation, the status of the disqualified attorney, prejudice to a party if disqualified, extensiveness of the screening, and any ulterior motive for filing motion to disqualify.  *See Intellectual Ventures*, 2011 WL 2692968, at *14; *Nemours Found.*, 632 F. Supp. at 428-30 (allowing the representation to continue only where under the circumstances the factors, on balance, favored continued representation by current counsel such as in case where the disqualified attorney was a lower level associate, who performed a minor role in the prior representation, had no recollection of the confidential information and the motion was untimely).  All factors would have, even in the ordinary course, militated against permitting Labaton's continued representation of Plaintiffs.  Notably, by way of example, Labaton's Delaware office has only five attorneys.

[7] As courts have warned, "[e]ven the most rigorous self-discipline might not prevent a lawyer from unconsciously using or manipulating a confidence acquired in the earlier presentation and transforming it into a telling advantage in the subsequent litigation."  *Emle Indus., Inc., v Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973).  It is exceedingly possible, and appears quite probable, that at least a lack of self-discipline led to the manipulation of confidences acquired in Mr. Farrell's representation of Defendants, which conferred a distinct advantage upon Wayne County.

to file suit, including an evaluation of the likelihood of success and the potential for an out-of-court resolution, a prediction on the strategy and reaction of the defendants, and a balancing of potential costs and benefits. Mr. Farrell had unparalleled and privileged first-hand insight, and the Defendants should not be forced to just overlook all of this.

Courts are guided by the principle that "in the interest of avoiding the appearance of impropriety, it is 'more appropriate to err on the side which would protect the integrity of the profession and promote a favorable impression with the general public.'" *Del-Chapel Assocs. v. Ruger*, 2000 WL 488562, at *5 (Del. Ch. Apr. 17, 2000) (quoting *Gieder v. Waxman*, 1983 WL 21397, at *4 (Del. Ch. Sept. 16, 2983)); *see also Am. Roller*, 513 F.2d at 984 (finding that an attorney is prohibited from representing a client "where there may be the appearance of a possible violation of confidences.").

Notably, MRPC 1.10 requires "an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures." MRPC 1.10(a)(2)(ii). Labaton did the opposite. It declined to respond to Defendants' inquiries and instead chose to withdraw without notice and without certifying compliance with the ethical rules.[8]

If Wayne County serves as lead plaintiff, and if its counsel represents the interests of the class, Defendants will suffer the looming specter that the disclosure of their confidential and privileged information actually prompted, and may continue to affect, this proceeding. This prejudice is immense. No defendant should have to respond to a complaint and litigate a class action triggered by their former attorney and filed to advance the interests of his new firm (and

---

[8] Even when the _procedural_ requirements of MRPC 1.10 are met, this Court has disqualified a law firm. *See, e.g., Enzo Life Sciences, Inc. v. Adipogen Cop.*, 2013 WL 613791 (D. Del. Nov. 20, 2013) (Andrews, J.).

12

potentially his own interests).  Labaton's withdrawal and Wayne County's engagement of new counsel cannot cure the problem.

## III.    WAYNE COUNTY'S LAWSUIT IS FRUIT OF A POISONOUS TREE AND IT IS AN IMPROPER AND INADEQUATE LEAD PLAINTIFF

Defendants do not dispute Wayne County's financial interest in this litigation, as articulated in Wayne County's Opening Brief in support of its Lead Plaintiff Motion ("WCOB"). Wayne County fails, however, to satisfy the typicality and adequacy requirements of FRCP 23. Although the extreme fact pattern presented here does not fit neatly into the ordinary framework for evaluating lead plaintiff motions, to Defendants' knowledge, the egregious facts presented here are *unprecedented*.  Regardless, the Court should turn a blind eye.

### A.    Wayne County Fails The Typicality Requirement

Under Wayne County's own articulation of the standard applicable with respect to typicality, the Court considers whether Wayne County's circumstances are "markedly different." (WCOB at 8 (citing *City of Roseville Emps.' Ret. Sys. v. Horizon Lines Inc.*, 2009 WL 1811067, at *2 (D. Del. June 18, 2009)).)  *See also Wigginton v. Advance Auto Parts, Inc.*, 2018 WL 5729733, at *4 (D. Del. Nov. 2, 2018) ("As to typicality under Rule 23, the Court must determine whether [the proposed lead plaintiff's] circumstances or legal theories are 'markedly different' than those of the proposed class.") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001)); FRCP 23(A)(3) ("The claims or defenses of the representative parties are typical of the claims *or defenses* of the class.") (emphasis added).

Wayne County claims that "[t]he typicality requirement is satisfied here because Wayne County seeks the same relief and advances the same legal theories as other Class members, and it is not subject to any unique defenses." (*Id.*)  Not so.  First, although Wayne County advances legal theories that other class members might have similarly referenced, Wayne County's legal strategy

13

and legal theories are distinct.  This action was filed only after Defendants' attorney joined Labaton.  The legal theories supporting the Complaint are inextricably tied—under the current record and in accordance with the negative inferences commanded by Labaton's actions and omissions—to this contemporaneous association with Mr. Farrell.  Second, in light of this association and the suspect timing of the initiation of this action, Wayne County is subject to and will face legal defenses unique to Wayne County.  Should this matter proceed to discovery with Wayne County as lead plaintiff, Defendants have every right and every intent to seek extensive party and third-party discovery into the circumstances surrounding the genesis of this action.  Such discovery has the acute likelihood of prejudicing the class.  Wayne County fails the typicality requirement.

### B.    Wayne County Fails The Adequacy Requirement

The standard as stated by Plaintiffs for evaluating adequacy requires the Court to evaluate whether Wayne County has the ability to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between its claims and those asserted on behalf of the class.  (WCOB at 8 (*City of Roseville*, 2009 WL 1811067, at *2).)  *See also Vandevelde v. China Nat. Gas, Inc.*, 277 F.R.D. 126, 132 (D. Del. 2011) ("The adequacy requirement mandates that a representative party be able to 'fairly and adequately protect the interests of the class.'") (quoting FRCP 23(a)(4)).  Federal courts do not shy away from taking into account the purpose of discouraging lawyer-driven litigation and other inequities in evaluating the adequacy of a proposed lead plaintiff.  *See, e.g.*, *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 844 F. Supp. 2d 498, 501 (S.D.N.Y. 2012) (evaluating an improper monitoring agreement between proposed lead plaintiff and its counsel and finding that "such a practice fosters the very tendencies toward lawyer-driven litigation that the PSLRA was designed to curtail").

14

The problem here with Wayne County's adequacy is unique—as this action brings new meaning to "lawyer-driven" litigation. Wayne County's representation of the class flows from an irreconcilable conflict that its former counsel never attempted to remediate prior to filing this action, and it strongly appears to be predicated upon confidential information relayed, whether wittingly or unwittingly, by Defendants' former attorney. Wayne County fails the adequacy requirement.

C.    **Defendants Have Standing To Present Facts And Argument Ignored By Wayne County**

Wayne County suggests that only class members may object to or rebut its proffered presumption, if accepted by the Court, that Wayne County is an adequate plaintiff. Under the facts here, however, attempting to deny Defendants standing to present argument is intrinsically problematic. It is true that even though other courts have recognized that "there is no textual provision in the PSLRA that precludes a defendant from filing its opposition to a motion to appoint lead plaintiff or lead counsel," *see City of Pontiac*, 844 F. Supp. 2d at 501 (citing 15 U.S.C. § 78u–4(a)(3)(B)), the Third Circuit has determined that "only class members may seek to rebut the presumption" that a proposed lead plaintiff is adequate if it has the most significant financial interest and satisfies the requirements of FRCP 23. *In re Cendant*, 264 F.3d at 268. However, consideration of a rebuttal to the presumption regarding the adequacy of a proposed lead plaintiff is only the second of two stages of the Court's analysis. The Court must first exercise its judgment as to whether the proposed lead plaintiff satisfies FRCP 23.

As the Third Circuit in *In re Cendant* explained, the PSLRA requires a "threshold determination of whether the movant with the largest financial losses satisfies the typicality and adequacy requirements [that] should be a product of the court's independent judgment." *In re Cendant*, 264 F.3d at 263–64. The Court in *In re Cendant* did not preclude consideration of

15

information or argument submitted by other parties in conjunction with its initial threshold determination whether the proposed plaintiff satisfies the requirements of FRCP 23. Quite the contrary. The Third Circuit prescribed that, "[i]n conducting the initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements, *the court may and should consider* the pleadings that have been filed, the movant's application, and *any other information that the court requires to be submitted*." *Id.* at 264 (emphasis added); *see also id.* at 262 ("[W]e think that a district court would be well within its discretion in … seeking further information if it deems the original submissions to be an inadequate basis for an informed decision.").[9] This Court has every right to consider Defendants' arguments and the facts presented in undertaking its threshold independent inquiry, and, under the circumstances, it should.

Even were the Court to determine that the preclusion of argument from non-members of the class extends to the Court's threshold determination as well, the reasoning underlying such preclusion would not apply here. In the ordinary course, class action defendants have interests diametrically opposed to the class and related only to their interests in prevailing in the lawsuit. As perceived by the Eastern District of Pennsylvania, which adopts a broad view of the implications of *In re Cendant*, the logic underlying the Court's conclusion in *In re Cendant* is that "[p]recluding arguments from a party whose interests are diametrically opposed to those of the class is logical at the beginning of litigation, when there is [ordinarily] little danger of prejudice to

---

[9] The Southern District of New York has observed that "the PSLRA contemplates that the Court itself will make an independent inquiry before selecting lead plaintiff and lead counsel, and, *a fortiori,* the Court is free to solicit the views of any interested party, including the defendants, in making this inquiry." *City of Pontiac*, 844 F. Supp. 2d at 501 n.3. This view is easily reconciled with even an expansive reading of the Third Circuit's opinion in *In re Cendent*—the Court is not required to but may consider arguments by defendants or non-members of the class in conducting its independent inquiry if warranted, as here.

16

the defendant based on the selection of a particular lead plaintiff." *In re Herley Indus. Inc.*, 2010 WL 176869, at *2 (E.D. Pa. Jan. 15, 2010). In the extraordinary case presented, Defendants *do* face *substantial* risk of prejudice.

Defendants are at risk that their attorney triggered the filing of this case, and Wayne County's representation of the class will further this violation of the MRPC. Defendants' interest are not merely one of opposition and a desire to win the case. They have an interest in ensuring that their confidential and privileged information is not being used by their former attorney's new firm and its clients to bring, and prosecute, an action against them. This is an exceedingly reasonable expectation.

## IV.    WAYNE COUNTY'S COUNSEL IS SIMILARLY CONFLICTED

Defendants' Motion to Disqualify is targeted at precluding Wayne County's new counsel from representing the putative class, thus plucking the fruit from the poisonous tree. Permitting Wayne County's new counsel to "cure" the conflicts articulated above by simply seeking out a different plaintiff undermines the purpose of the PSLRA's prescribed parameters for selecting a lead plaintiff—*i.e.*, "to ensure that securities litigation is investor-driven, as opposed to lawyer-driven." *In re Horsehead Hldg. Corp. Sec. Litig.*, 2017 WL 5188057, at *2 (D. Del. Nov. 9, 2017); *accord Freeman on behalf of Tesla, Inc. v. Musk*, 324 F.R.D. 73, 87 (D. Del. 2018). Indeed, allowing this to occur would be the *quintessence* of facilitating lawyer-driven litigation, and it would not remedy the fundamental problem here—*i.e.*, that Wayne County's Complaint was prompted by its conflicted former counsel, who, knowingly or unknowingly, may have shared his former clients' confidences.

"The selection of lead counsel in a shareholder derivative action filed in federal court is left to the sound discretion of the Court." *Musk*, 324 F.R.D. 73 at 77.[10]  This Court further has the inherent authority to supervise and delimit the professional conduct of attorneys appearing before toward the ends of "[i] preventing even the potential that a former client's confidences and secrets may be used against him, [ii] … maintain[ing] public confidence in the integrity of the bar, and [iii] … fulfill[ing] a client's rightful expectation of loyalty of his attorney in the matter for which he is retained." *Eon Corp.*, 2012 WL 4364244, at *2 (internal quotation marks omitted).  Each of these ends must be pursued here, and there can be no question the Court has the authority and discretion to require the appearance of an independent lead plaintiff with independent counsel as a prerequisite to this action moving forward.

## V.    THIS ACTION, AT A MINIMUM, CANNOT PROCEED WITHOUT DISCOVERY INTO THE CONFLICTS AT ISSUE

Here is what Wayne County and its new counsel would have everyone believe:  More than two years after the acquisition of Xura by Siris closed, and with all of the plaintiff-oriented law firms in the country, the firm that was scouring through filings related to a two-year-old deal just happened to be the very law firm that hired Defendants' prior counsel just weeks beforehand.  That has the air of the ludicrous on its face.  However, even if the Court determines that on the present record it should not take action based upon the strong appearance of impropriety, discovery into what information was relayed by Mr. Farrell and how this action came to be filed is necessary, and

---

[10] With respect to Defendants' opposition to the approval of lead counsel, the Third Circuit has held that any standing concern that might be raised by the plaintiff does not apply:  "When the challenge is not to adequacy [of counsel] but is … to a lead plaintiff's procedural failure … we hold that defendants do have standing to challenge the retention of lead counsel." *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 267 (3d Cir. 2005) (holding that defendants could challenge the procedural failure of plaintiffs to secure court approval).  Here, Defendants do not challenge the competency of the lawyers.  Defendants challenge the procedural and ethical failures that have infected Wayne County, this action, and Wayne County's counsel.

18

such discovery would occur in any event should the matter proceed down Wayne County's proposed path, at a time that would augment the prejudice to the putative class. To the extent there is any shadow of a doubt as to the proper outcome here, proper inquiry into the question avoided by Wayne County and Wayne County's counsel to date is warranted: what, and more particularly, _who_ prompted the filing of this case.

As of this filing, Wayne County has refused to provide an adequate and fulsome answer to this question. Wayne County has, on the other hand, represented that it is prepared to submit affidavits regarding the scope of its knowledge regarding the facts at issue in this litigation. Defendants should be given the opportunity to test these forthcoming affidavits, and probe the more pointed and apposite questions presented by Defendants. Defendants and the Court are entitled to know whether this action was initiated because of and with the benefit of confidential information relayed—whether wittingly or unwittingly—by Defendants' former counsel and whether this lawsuit is the direct and sole result of an egregious breach of client loyalty. There can be no doubt that the Court has the authority to permit this in conjunction with its independent threshold inquiry into the satisfaction of Rule 23.

This litigation should not move forward without the cleansing effect of an adequate inquiry into what has occurred. Nothing less can protect the integrity of this Court, public faith in these proceedings, and Defendants' right to the protection of their confidences.

## <u>CONCLUSION</u>

For the forgoing reasons, this Court should grant Defendants' Motion to Disqualify and deny Wayne County's Lead Plaintiff Motion.

DATED:  March 15, 2019                          **DLA PIPER LLP (US)**

                                                 */s/ John L. Reed*
                                                John L. Reed (I.D. No. 3023)
                                                Ethan Reed (I.D. No. 5813)
                                                Peter H. Kyle (I.D. No. 5918)
                                                Harrison Carpenter (I.D. No. 6018)
                                                1201 North Market Street, Suite 2100
                                                Wilmington, DE  19801
                                                T: (302) 468-5700
                                                F: (302) 394-2341
                                                john.reed@dlapiper.com
                                                ethan.Reed@dlapiper.com
                                                peter.kyle@dlapiper.com
                                                harrison.carpenter@dlapiper.com

                                                *Attorneys for Defendants Mavenir, Inc.,*
                                                *Philippe Tartavull, Henry R. Nothhaft,*
                                                *Susan D. Bowick, James Budge, Niccolo de*
                                                *Masi, Doron Inbar, and Mark C. Terrell*

20