# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 1:18-cv-01229-CFC |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| MAVENIR, INC. F/K/A XURA, INC., PHILIPPE TARTAVULL, HENRY R. NOTHHAFT, SUSAN D. BOWICK, JAMES BUDGE, NICCOLO DE MASI, MATTHEW A. DRAPKIN, DORON INBAR, and MARK C. TERRELL, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**COMBINED BRIEF (1) IN FURTHER SUPPORT OF PLAINTIFF WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL, AND (2) IN OPPOSITION TO MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

**OF COUNSEL:**

**THORNTON LAW FIRM LLP**
Guillaume Buell (*pro hac vice*)
1 Lincoln Street
Boston, Massachusetts 02111
Tel.: (617) 720-1333
Email: gbuell@tenlaw.com

**KIRBY MCINERNEY LLP**
Peter S. Linden (*pro hac vice*)
Ira M. Press (*pro hac vice*)
825 Third Avenue
New York, New York 10022
(212) 371-6600
Email: plinden@kmllp.com
Email: ipress@kmllp.com

*Counsel for Plaintiff Wayne County Employees' Retirement System and Proposed Co-Lead Counsel for the Class*

**ROSENTHAL, MONHAIT & GODDESS, P.A.**
Jessica Zeldin (Del. Bar No. 3558)
P. Bradford deLeeuw (Del. Bar No. 3569)
919 N. Market Street, Suite 1401
P. O. Box 1070
Wilmington, Delaware 19899-1070
(302) 656-4433
jzeldin@rmgglaw.com
bdeleeuw@rmgglaw.com

*Liaison Counsel for Plaintiff Wayne County Employees' Retirement System and Proposed Liaison Counsel for the Class*

# **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ........................................................................................ 1

FACTUAL BACKGROUND .......................................................................................... 3

ARGUMENT .................................................................................................................. 5

I.      Defendants Lack Standing to Challenge the Motion for Appointment of Lead
        Plaintiff and Lead Counsel and Base their Argument on Insufficient Speculation. ...........5

        A.      Defendants Lack Standing to Challenge the Lead Plaintiff Motion. ......................5

        B.      Speculation is Insufficient to Defeat WCERS's Lead Plaintiff Motion. ................8

II.     Defendants' Motion to Disqualify Should be Denied Because the Facts and
        Circumstances Surrounding Thornton, Kirby, and Rosenthal's Role as Co-
        Counsel to WCERS Do Not Support Disqualification. ...................................................12

        A.      There is No Conflict that May be Imputed to Thornton, Kirby, or
                Rosenthal Because They Had No Interaction with Farrell about this
                Action.....................................................................................................................13

        B.      The Fruit of the Poisonous Tree Doctrine is Inapplicable. ....................................14

        C.      Courts Reject a Per Se "Double Imputation" Theory of Attorney Conflict.. ........15

        D.      Defendants' Motion to Disqualify is Untimely. ....................................................17

III.    Defendants' Request for Discovery Should be Denied as Unnecessary: the Sworn
        Declarations Leave no Grey Area Suggesting that Defendants' Motion has any
        Merit.........................................................................................................................18

        CONCLUSION ..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Akerly v. Red Barn Sys.*,
  551 F.2d 539 (3d Cir. 1977) ................................................................... 3, 12, 13, 16

*Am. Roller Co. v. Budinger*,
  513 F.2d 982 (3d Cir. 1975) ................................................................... 10

*Am. Can Co. v. Citrus Feed Co.*,
  436 F.2d 1125 (5th Cir. 1971) ............................................................... 16

*Bank v. Elec. Payment Servs., Inc.*,
  No. 95 Civ. 614, 1997 WL 811552 (D. Del. Dec. 30, 1997) .................... 7

*BayBrook Homes, Inc. v. Banyan Constr. & Dev., Inc.*,
  991 F. Supp. 1440 (M.D. Fla. 1997) ...................................................... 16

*Bowers v. Tesaro Inc.*,
  No. 18 Civ. 10086, 2018 WL 2089358 (D. Mass. May 4, 2018) ............. 19

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................................................. 6, 7, 9

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
  844 F. Supp. 2d 498 (S.D.N.Y. 2012) ................................................... 7, 12

*City of Riviera Beach Gen. Emps.' Ret. Sys. v. Macquarie Infrastructure Corp.*,
  No. 18 Civ. 3608, 2019 WL 364570 (S.D.N.Y. Jan. 30, 2019) ............... 9

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines Inc.*,
  No. 08 Civ. 969, 2009 WL 1811067 (D. Del. June 18, 2009) ................. 9

*Del-Chapel Assocs. v. Ruger*,
  No. 16942, 2000 WL 488562 (Del. Ch. Apr. 17, 2000) .......................... 10

*Dutton v. Harris Stratex Networks, Inc.*,
  No. 08 Civ. 755, 2009 WL 1598408 (D. Del. June 5, 2009) ................... 6

*Emerson v. Genocea Biosciences, Inc.*,
  No. 17 Civ. 12137, 2018 WL 839382 (D. Mass. Feb. 12, 2018) ............. 20

*Eon Corp. IP Holdings LLC v. Flo TV Inc.*,
  No. 10 Civ. 812, 2012 WL 4364244 (D. Del. Sept. 24, 2012) ................. 15, 17

*Essex Chem. Corp. v. Hartford Accident & Indem. Co.*,
  993 F. Supp. 241, 247 (D.N.J. 1998) .................................................... 12, 15, 16, 17

*Ex Parte Wheeler*,
   978 So.2d 1 (Ala. 2007) ........................................................................ 16

*First Small Bus. Inv. Co. of Cal. v. Intercapital Corp. of Or.*,
   108 Wash.2d 324 (Wash. 1987) ............................................................ 16

*In re Forcefield Energy Inc. Sec. Litig.*,
   No 15 Civ. 3020, 2015 WL 4476345 (S.D.N.Y. July 22, 2015) ............. 10

*Freeman v. Musk*,
   324 F.R.D. 73 (D. Del. 2018) ........................................................... 14, 15

*In re Gen. Elec. Sec. Litig.*,
   No. 09 Civ. 1951, 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ............ 12

*In re Herley Indus. Inc.*,
   No. 06 Civ. 2596, 2010 WL 176869 (E.D. Pa. Jan. 15, 2010) ................. 7

*In re Horsehead Holding Corp. Sec. Litig.*,
   No. 16 Civ. 292, 2017 WL 5188057 (D. Del. Nov. 9, 2017) ................. 15

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015) .................................................... 20

*Marsden v. Select Med. Corp.*,
   246 F.R.D 480 (E.D. Pa. 2007) ............................................................... 9

*In re Merck & Co. Sec. Litig.*,
   432 F.3d 261 (3d Cir. 2005) ................................................................. 6, 7

*In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*,
   No. MDL 1658, 2009 WL 331426 (D.N.J. Feb. 10, 2009) ...................... 9

*Nemours Found. V. Gilbane, Aetna Fed. Ins. Co.*,
   632 F. Supp. 418 (D. Del. 1986) ..................................................... 17, 18

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
   63 F. Supp. 3d 394 (D. Del. 2014) .......................................................... 9

*In re Organogenesis Sec. Litig.*,
   241 F.R.D. 397 (D. Mass. 2007) ............................................................. 7

*Panduit Corp. v. All States Plastic Mfg. Co.*,
   744 F.2d 1564 (Fed. Cir. 1984) ............................................................. 16

*Plumbers & Pipefitters Nat'l Pension Fund v. Burns*,
   292 F.R.D. 515 (N.D. Ohio 2013) ......................................................... 12

*In re Pfizer Inc. Sec. Litig.*,
　282 F.R.D. 38 (S.D.N.Y. 2012) .................................................................... 7

*In re Processed Egg Prods. Antitrust Litig.*,
　312 F.R.D. 171 (E.D. Pa. 2015) .................................................................. 9

*Proctor & Gamble Co. v. Haugen*,
　183 F.R.D. 571 (D. Utah 1998) .................................................................. 14

*Realco Servs., Inc. v. Holt*,
　479 F. Supp. 867 (E.D. Pa. 1979) .............................................................. 16

*Richardson-Merrell, Inc. v. Koller*,
　472 U.S. 424 (1985) .................................................................................. 16

*Smith v. Whatcott*,
　774 F.2d 1032 (10th Cir. 1985) ................................................................. 16

*Soto v. Hensler*,
　235 F. Supp. 3d 607 (D. Del. 2017) ............................................................ 9

*In re Ustarcom, Inc. Sec. Litig.*,
　No. 04 Civ. 4908, 2010 WL 1945737 (N.D. Cal. May 12, 2010) ............................ 12

*Waterford Township Police v. Mattel, Inc.*,
　No. 17 Civ. 4732, 2017 WL 10667732 (C.D. Cal. Sept. 29, 2017) ......................... 20

*Wigginton v. Advance Auto Parts, Inc.*,
　No. 18 Civ. 212, 2018 WL 5729733 (D. Del. Nov. 2, 2018) .................................. 9

**Other Authorities**

15 U.S.C. § 78u-4 ............................................................................. 6, 9, 19

7 William B. Rubenstein, *Newberg on Class Actions* § 22:32 (5th ed. 2018) ................ 6

American Bar Association, *Annotated Model Rules of Professional Conduct*,
　Comment [20], 4 (7th ed.) ........................................................................ 18

Restatement (Third) Of The Law Governing Lawyers § 123 (2000) ..................... 15, 16

*The Scope to the Delaware Lawyers' Rules of Professional Conduct*,
　Comment [20], 307 .................................................................................. 18

Plaintiff Wayne County Employees' Retirement System ("WCERS" or "Plaintiff") respectfully submits this Combined Brief in Further Support of its Motion for Appointment as Lead Plaintiff and Approval of Co-Lead Counsel and Liaison Counsel; and in Opposition to Certain Defendants' Motion to Disqualify Plaintiff's Counsel.[1]

## SUMMARY OF ARGUMENT

Defendants' entire argument with respect to disqualifying Kirby McInerney LLP ("Kirby"), Thornton Law Firm LLP ("Thornton"), and Rosenthal, Monhait & Goddess, P.A. ("Rosenthal") is based on untrue speculation and innuendo. Together with this brief, WCERS submits sworn declarations from WCERS's former and present counsel, as well as Mr. Derrick Farrell, which establish that Defendants' fears and speculation have no basis.

The hinge on which Defendants' entire argument swings is the false speculation that Farrell, who was formerly employed by Defendants' counsel and represented Defendants in a parallel case in Delaware Chancery Court, had any involvement in this litigation or shared any of his former clients' confidences.

No one disputes that Farrell represented certain of the Defendants in a similar action prior to joining Labaton Sucharow ("Labaton"). But Farrell's sworn declaration, submitted herewith, confirms that when he joined Labaton, he had no involvement with this Action in any way.[2] Likewise, he did not share *any* client confidences with Labaton or anyone else. His only communication with Labaton about this Action was to inform that firm that he had a conflict once he became aware of this potential Action, at which time Labaton took steps to ethically screen him

---

[1] Mr. Drapkin is separately represented and did not join the motion to disqualify. *See* Drapkin Opp. to Wayne County Emps.' Ret. Sys. Mot. for Appointment as Lead Pl. & Approval of Selection of Lead Counsel (ECF No. 36). For ease of reference, WCERS refers to the defendants seeking disqualification as "Defendants."

[2] *See* deLeeuw Decl. Ex. E (Declaration of Derrick Farrell) ¶10.

from the Action.  Moreover, Labaton started working on this case in May 2018, *months before* Farrell joined the firm.

These facts alone require denial of Defendants' motion to disqualify. But the attached sworn declarations also submitted herewith by WCERS and by attorneys at Labaton, Thornton, Kirby, and Rosenthal further cement that Defendants' motion to disqualify is based on incorrect speculation and innuendo: No one at WCERS, Thornton, Kirby, or Rosenthal has ever spoken with Farrell about this Action.[3]  No one at Labaton ever spoke to Farrell about the Action other than to respond to a possible conflict, and no one at WCERS or its present counsel has ever received any non-public information about Defendants or the claims underlying this Action.

Defendants' motion also makes several representations to this Court that are, at best, misleading. On December 11, 2018, Labaton explained to counsel for Defendants at DLA Piper the circumstances surrounding the filing of this litigation and that Farrell never had any role in it and never discussed his former clients' confidences with anyone at Labaton.  John Reed, the same DLA Piper attorney who signed Defendants' instant motion to disqualify, was on that call. As a result, Defendants' representation to the Court in the Motion to Disqualify that "Labaton never provided clarity into the circumstances surrounding the filing of this litigation" is **<u>false</u>**. Defs.' Combined Opening Br. In Supp. Of Their Mot. To Disqualify Pls.' Counsel at 2 (ECF No. 34) (hereinafter, "Br.").  Defendants may not want to believe what they were told, but they should not withhold from the Court the substance of that December 11, 2018 telephone conference.

Defendants are also wrong on the law. The criminal law doctrine of "fruit of the poisonous tree" is not applicable to conflict or disqualification analysis.  Furthermore, the Third Circuit has

---

[3] *See* deLeeuw Decl. Ex. A (Declaration of Gerard Grysko) ("Grysko Decl.") ¶6; Ex. D (Declaration of David Schwartz) ("Schwartz Decl.") ¶9; Ex. B (Declaration of Guillaume Buell ("Buell Decl.") ¶7; Ex. C (Declaration of Peter Linden) ("Linden Decl.") ¶8.

held that there is no *per se* rule requiring the disqualification of an attorney if another co-counsel, at another firm, is disqualified for an imputed ethical reason. *Akerly* v. *Red Barn Sys.*, 551 F.2d 539, 543 (3d Cir. 1977).[4] Courts around the country, and within this Circuit, routinely reject Defendants' arguments. Notably, Defendants do not cite to a ***single*** case supporting the disqualification of a co-counsel law firm or subsequently-hired counsel by imputation of a claimed conflict at a predecessor counsel. Defendants instead quote unremarkable propositions of law from cases that involve the disqualification of a single law firm.

Defendants' motion is also untimely: Defendants waited nearly ***three months*** to raise a conflict issue with Plaintiff's former firm and ***seven months*** before filing a disqualification motion. As a result, the deadline for other class members to seek appointment as lead plaintiff has passed. As a result of Defendants' sharp tactics, if they win this meritless disqualification motion, they can escape liability for the wrongdoing asserted in the Complaint scot-free. For these reasons, the Court should deny the Motion to Disqualify.

As to Defendants' opposition to WCERS's lead plaintiff application, the PSLRA explicitly provides that only members of the class—which does not include Defendants—have standing to oppose. But even if Defendants had such standing, their entire argument is based on speculation heaped upon speculation, none of which is true and all of which is refuted by sworn declarations submitted herewith.

### FACTUAL BACKGROUND

This Action was first developed in May 2018 at Labaton, months before Farrell joined that firm. Schwartz Decl. ¶4;  Farrell Decl. ¶2.  At no time during the investigation or pendency of this Action did the lead attorney at Labaton who was responsible for this Action at the time discuss the

---

[4] Unless otherwise noted, all internal citations and quotations are omitted and emphases are added.

substance of any Xura related litigation whatsoever with Farrell. Schwartz Decl. ¶7. This Action was developed by attorneys in Labaton's *New York* office after lawyers there reviewed publicly-available filings in the Delaware Chancery Court. *Id.* ¶¶5,8.

At no time did Farrell discuss the substance of the Appraisal Action against Xura or this Action with any attorney at Labaton, nor did he ever discuss any confidential information related to Xura, its board or Siris with any attorney at Labaton whatsoever. Farrell Decl. ¶7. The first Farrell recalls hearing about this Action is on August 9, 2018 when he received a conflict check notice from the Firm relating to this Action, and Farrell responded that he had a conflict of interest. *Id.* ¶9. On August 14, 2018, Labaton sent Farrell and the firm an official notice that he was being walled off of this Action. *Id.* ¶10. Farrell has never represented WCERS and since joining Labaton has had no contact with it whatsoever. *Id.* ¶11.

On approximately December 11, 2018 (shortly after Defendants reached out to Labaton about a potential conflict), Labaton attorneys spoke with Defendants' counsel John Reed on the telephone and informed him that an ethical wall had been set up at Labaton to wall Farrell off from this Action. Schwartz Decl. ¶10. Labaton attorneys also informed Mr. Reed that Labaton partner David Schwartz developed this Action and that Farrell had no involvement whatsoever in the development of the case. *Id.* In an effort to resolve the issue, Labaton offered to provide declarations to Xura to that effect. *Id.* Additional discussions between Labaton and Defendants proved unfruitful, so, out of an abundance of caution, Labaton withdrew from this Action on February 8, 2019. *Id.* ¶10-11; Notice of Withdrawal of Counsel (ECF No. 27). At no time did any personnel at Thornton, Kirby, or Rosenthal receive any non-public information concerning the Defendants or the claims in this Action from Labaton or any other source. Buell Decl. ¶3, Linden

4

Decl. ¶3, deLeeuw Decl. ¶3.  And no one from Thornton, Kirby, or Rosenthal has spoken with Derrick Farrell about this Action.  Buell Decl. ¶4, Linden Decl. ¶4, deLeeuw Decl. ¶4.

Thornton, Kirby, and Rosenthal played no role in researching or investigating the Action, or drafting the pleadings in the Action. Buell Decl. ¶2, Linden Decl. ¶2, deLeeuw Decl. ¶2. Between August 7, 2019 and August 9, 2019, Thornton served as a liaison counsel between WCERS and Labaton with respect to: (a) providing a one-page summary of the Action from Labaton to WCERS; (b) providing a draft of the complaint from Labaton to WCERS; and (c) assisting WCERS in executing the papers necessary to file the Complaint in this Action. Buell Decl. ¶5.  Thornton's brief role as liaison to WCERS was *de minimus*: Thornton had no role in the prosecution of the Action between August 10, 2018 and January 24, 2019. *Id.* ¶6.

On January 24, 2019, Labaton informed Thornton that Labaton would be withdrawing as counsel for WCERS out of an abundance of caution based on Labaton's employment of an (unnamed) attorney who used to be employed by DLA Piper.  *Id.* ¶7.  There was no discussion of Farrell specifically or of the substance of this Action.  *Id.*  WCERS subsequently retained Thornton, Kirby, and Rosenthal to represent it; the latter two firms had no involvement in the Action prior that point.  Buell Decl. ¶8, Linden Decl. ¶2, deLeeuw Decl. ¶2.

## ARGUMENT

**I.     Defendants Lack Standing to Challenge the Motion for Appointment of Lead Plaintiff and Lead Counsel and Base their Argument on Insufficient Speculation.**

### A.     Defendants Lack Standing to Challenge the Lead Plaintiff Motion.

Defendants' effort to oppose WCERS's lead plaintiff application fails as a matter of law because Defendants lack standing to do so.  The PSLRA contemplates a two-stage process for courts considering lead plaintiff motions.  First, the court determines which class member, among those that filed complaints or motions within the statutory sixty-day period, is entitled to the

PLSRA's "most adequate plaintiff" presumption.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also* 7 William B. Rubenstein, *Newberg on Class Actions* § 22:32 (5th ed. 2018) ("a potential lead plaintiff applicant may satisfy the PSLRA's requirements for seeking that position … by filing the first complaint").  As WCERS is the only eligible movant, it is clearly entitled to that presumption.

Second, the courts can consider attempts to rebut that presumption.  However, the presumption can "be rebutted only upon *proof by a member of the purported plaintiff class*" that the presumptive lead plaintiff is inadequate or is subject to disabling unique defenses.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  As Defendants are not "member[s] of the purported plaintiff class," they lack standing to challenge this motion.[5]  *See In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 267 (3d Cir. 2005) (stating defendants do not have standing challenge lead plaintiff's appointment); *Dutton v. Harris Stratex Networks, Inc.*, 2009 WL 1598408, at *1 n.2 (D. Del. June 5, 2009) ("[I]n the Third Circuit, Defendants do not have standing to challenge the appointment of lead plaintiffs or their selection of lead counsel.") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("[O]nly class members may seek to rebut the presumption [regarding identification of lead plaintiff], and the court should not permit or consider any arguments by defendants or non-class members.")).[6]

---

[5] As noted below, Defendants' speculation-based challenges also fall short of the "proof" required by the PSLRA.

[6] Defendants' standing to challenge WCERS's counsel is even more questionable.  Defendants rely on *Merck*, 432 F.3d at 267 for the proposition that a defendant has standing to challenge the approval of lead counsel when the challenge is based on some procedural failure, rather than the competency of the lawyer.  Br. at 18.  However, the procedural deficiency in *Merck* was that the lead plaintiff improperly retained appellate counsel without first obtaining court approval.  *Merck*, 432 F.3d at 266.  Here, Defendants can point to no *procedural* deficiency relating to Plaintiff or its current counsel, and Defendants' unfounded assertions based on a purported ethical failure on the part of prior counsel, even if correct, would not afford Defendants standing to challenge WCERS's current counsel, in the absence of any basis for their speculation and in the face of counsel's sworn denials of having received any confidential information.

Defendants argue that the Third Circuit left open the possibility in *Cendant* that courts may consider a defendant's challenges to a lead plaintiff motion.  Br. at 15-17.  This is not accurate. Notably, *Cendant* did not even involve a defendant's challenge to a lead plaintiff motion, but in addressing the standard of who may rebut the presumption that a plaintiff is the most adequate lead plaintiff (the exact situation the Court faces here), the Third Circuit stated: "**only class members** may seek to rebut the presumption, **and the court should not permit or consider any arguments by defendants or non-class members**."  *Cendant*, 264 F.3d at 268.  The Third Circuit could not have been clearer that Defendants are foreclosed from seeking to disqualify WCERS at the lead plaintiff application stage.[7]

Defendants are not permitted to challenge lead plaintiff applications "because defendants will rarely have the best interests of the class at heart."  *Merck*, 432 F.3d at 267.   Courts have even recognized, in the context of class certification where, unlike the motion at bar, defendants actually have standing to challenge the plaintiff's adequacy, that "defendants often seek to cast aspersions on the adequacy of class representatives and counsel while truly seeking to have no class certified at all."  *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 411 (D. Mass. 2007).  As a result, "[w]hen assessing the adequacy of counsel, courts are generally skeptical of defendants' ethical attacks on class counsel."  *See In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 47 (S.D.N.Y. 2012); *see also Bank*

---

[7] The cases Defendants rely upon do not support reaching a different conclusion here.  *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 844 F. Supp. 2d 498 (S.D.N.Y. 2012) is out of circuit, not binding, and therefore not persuasive in light of the Third Circuit's clear language proscribing such challenges. More importantly, the law in this Circuit is to the contrary. Defendants' reliance on *In re Herley Indus. Inc.*, 2010 WL 176869 (E.D. Pa. Jan. 15, 2010), is also unpersuasive.  *See* Br. At 17.   *Herley* did not even concern a motion to appoint a lead plaintiff. *Herley*, 2010 WL 176869, at *1.  Rather, it concerned an application to substitute a new lead plaintiff more than three years into the case after the court-appointed lead plaintiff ceased to exist. *Id.*  Further, *Herley* clearly states: "*At the initial appointment stage, defendants are prohibited from challenging the appointment of a lead plaintiff* because the PSLRA allows input only from 'member[s] of the purported plaintiff class.'" *Id.* at *2.

*v. Elec. Payment Servs., Inc.*, 1997 WL 811552, at *19 n.17 (D. Del. Dec. 30, 1997) ("It is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified … [This] is a bit like permitting a fox, although with pious countenance, to take charge of the chicken house"). *A fortiori*, such challenges by Defendants should be viewed with great skepticism when raised on a motion which Defendants lack standing to challenge.

Here, the Court has good reason to be suspicious of Defendants' motives in challenging the typicality and adequacy of WCERS and its current counsel. Although Defendants complain about an allegedly egregious conflict on the part of WCERS's former counsel (Labaton), they admit that they failed to raise this issue with Labaton for nearly *three and a half months after this Action was commenced*. Aff. of John L. Reed at ¶ 10 (ECF No. 35). It is clear that Defendants have crafted a phantom "irreconcilable conflict" as a pretext to escape this litigation. Were Defendants successful in having WCERS disqualified, the inequitable result would be that this case would likely crumble because WCERS is the only plaintiff that moved for lead plaintiff, and Defendants will likely argue that any attempt by any other shareholders to re-file these claims would now be time barred. Accordingly, the Court should appoint WCERS as Lead Plaintiff and approve its selection of Co-Lead Counsel and Liaison Counsel.

### B.  Speculation is Insufficient to Defeat WCERS's Lead Plaintiff Motion.

Even assuming *arguendo* that Defendants have standing to challenge WCERS's lead plaintiff application, Defendants' arguments for opposing Plaintiff's motion by trying to disqualify WCERS and its counsel are unavailing. As set forth in WCERS's Opening Brief, WCERS meets each of the requirements of the PSLRA, rendering it the appropriate lead plaintiff.[8] Opening Br.

---

[8] At the lead plaintiff application stage, Courts do not conduct a wide-ranging inquiry into whether the presumptive lead plaintiff meets the typicality and adequacy requirements of Fed. **[continued]**

in Supp. Of Mot. for Appointment as Lead Pl. and Approval of Selection of Lead Counsel at 6-9 (ECF No. 29) (hereinafter, "Opening Br."). The PSLRA is clear that the "most adequate plaintiff" presumption can only be rebutted with "proof" of inadequacy or unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Mere speculation that a presumptive lead plaintiff is an inadequate class representative and subject to unique defenses is not sufficient to defeat a lead plaintiff application. *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014); *see also Wigginton v. Advance Auto Parts, Inc.*, 2018 WL 5729733, at *6 (D. Del. Nov. 2, 2018) ("Mere allegations cannot rebut the statutory presumption in favor of a lead plaintiff."); *Soto v. Hensler*, 235 F. Supp. 3d 607, 620 (D. Del.2017) ("The Third Circuit has stressed that the [PSLRA] requires more than mere assertions in order to rebut the presumptive lead plaintiffs' status.").[9]

This is especially true where, like here, the movant submits sworn statements rebutting the speculative allegations. *City of Riviera Beach Gen. Empls.' Ret. Sys. v. Macquarie Infrastructure Corp.*, 2019 WL 364570, at *7 (S.D.N.Y. Jan. 30, 2019) (holding that the rebuttal movant's "failure to proffer any proof" that the presumptive lead plaintiff acquired material non-privileged

---

R. Civ. P. 23. *See Cendant*, 264 F.3d at 263 ("[B]oth the statutory structure and the legislative history suggest that the court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements need not be extensive."); *City of Roseville Emps.' Ret. Sys. v. Horizon Lines Inc.*, 2009 WL 1811067, at *2 (D. Del. June 18, 2009) ("the movant must establish only a *prima facie* case of typicality and adequacy under traditional Rule 23 principles" and the Court's inquiry here "need not be extensive").

[9] Courts have similarly refused to give weight to defendants' challenges to a class representative at the class certification stage based on mere speculation. *See In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 171, 180-81 (E.D. Pa. 2015) ("Defendants provide no support for this notion [that some class representatives have individualized defenses], and the Court concludes that these purported individualized defenses are nothing but mere speculation, which are insufficient to defeat a finding of typicality and adequacy."); *In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*, 2009 WL 331426, at *14 (D.N.J. Feb. 10, 2009) ("[T]his Court can only conclude that the anticipated conflict is too speculative to disqualify these class representatives."); *Marsden v. Select Med. Corp.*, 246 F.R.D 480, 486 (E.D. Pa. 2007) (rejecting challenge to lead plaintiff's adequacy because it was a "speculative argument"). Here, where the threshold inquiry is lower than at class certification, it is even more appropriate to reject Defendants' speculative challenges.

information from the defendant, "*coupled with the [presumptive lead plaintiff]'s declaration that no [material non-privileged information] was communicated to [it]*" was fatal to rebuttal movant's claim); *In re Forcefield Energy Inc. Sec. Litig.*, 2015 WL 4476345, at *4 (S.D.N.Y. July 22, 2015) (rejecting challenge to lead plaintiff application, which was based on speculative allegation that the movant received private information, because the movant "flatly denie[d] that she received any non-public information" in her reply brief and the challenger "present[ed] no evidence to the contrary.").[10]

Defendants attempt to rebut this presumption by arguing that WCERS's case "strongly appears to be predicated upon confidential information relayed, whether wittingly or unwittingly, by Defendants' former attorney."[11]   Br. at 15.   However, Defendants have not provided *any* evidence of this.  Instead, they make this argument by heaping speculation upon speculation upon speculation.  First, Defendants speculate that Farrell shared confidential information concerning these claims upon joining Labaton.  *Id.* at 2, 5, 7.   The facts are the opposite: Labaton attorneys,

---

[10] The cases Defendants rely upon in asserting that WCERS's counsel should be disqualified, *Del-Chapel Assocs. v. Ruger*, 2000 WL 488562 (Del. Ch. Apr. 17, 2000) and *Am. Roller Co. v. Budinger*, 513 F.2d 982 (3d Cir. 1975), are inapposite. *See* Br. at 12. In *Del-Chapel*, the attorney who represented a client (Client A) in claims against an entity, later sought to represent that defendant (Client B) in claims against Client A, which the Court found improper because there was "a substantial relationship" between the matters. *Del-Chapel*, 2000 WL 488562, at *1-2. In contrast, here, different counsel, who have never represented any Defendants are representing WCERS. Farrell was not involved in representing WCERS prior to Labaton's withdrawal, and he is not currently involved in any way. Farrell Decl. ¶7. In *Am. Roller Co.*, the defendant in a patent litigation moved to disqualify plaintiff's counsel on the basis that it employed an attorney who had formerly worked for the defendant and prepared and prosecuted some of its patent applications that were relevant to the litigation. *Am. Roller Co.*, 513 F.2d at 982. The Court remanded to determine whether the attorney's work for the defendant was "substantially related" to the issues being litigated. 513 F.2d at 986. However, unlike in *Am. Roller Co.*, the purportedly-conflicted firm is no longer representing a party to this case. Accordingly, these cases offer no support for the proposition that WCERS's counsel should be disqualified.

[11] Defendants challenge the adequacy of WCERS's current counsel on similar grounds. Br. at 17. This challenge fails for the same reasons that Defendants' challenge of WCERS fails.

including Farrell, have submitted sworn denials. *See* Schwartz Decl. ¶¶7-8, Farrell Decl. ¶7. Indeed, the only evidence in the record (*i.e.*, Defendants' admissions that the Complaint is based on publicly available information and the sworn declarations submitted herewith) demonstrates that WCERS's counsel did not obtain or use confidential information for this Action.

Second, Defendants speculate that this confidential information (which the Labaton attorneys never received) was shared with WCERS, which has also submitted a sworn denial, and, in turn, Plaintiff's current counsel, which have also submitted sworn denials. *See supra*. Lacking any basis to so much as allege that WCERS or its current counsel ever received any confidential information concerning Defendants, Defendants speculate that this entire action "exists only because of the disloyalty of one of their former attorneys." Br. at 2. However, that is simply not the case and is squarely rebutted by the *facts*.

Indeed, Defendants admit that the Complaint is based entirely on publicly available information. Br. at 2 ("WCERS's complaint (the "Complaint") appears to be modeled after public submissions filed in the Chancery Actions in August 2017, November 2017, and January 2018."); Br. at 6 ("the allegations underlying WCERS's Complaint were made public well before even the Pre-Trial Brief of Obsidian was filed."); Br. at 7 ("And only then did WCERS, through Farrell's new firm, file this class action, re-stating allegations made in filings in the Appraisal Action."). These admissions also flatly contradict Defendants' unsupported allegation that WCERS's claims are predicated upon confidential information. Further, WCERS has submitted declarations which expressly rebut Defendants' speculative allegations and state that neither WCERS nor its counsel (former and present) ever received or used any non-public information concerning the Defendants. Grysko Decl. ¶4; Buell Decl. ¶3, Linden Decl. ¶3, deLeeuw Decl. ¶3. Defendants' failure to offer any evidence in support of their speculative allegations, coupled with the sworn statements

11

rebutting such speculative allegations and demonstrating the misleading nature of Defendants' assertions, are fatal to Defendants' challenge to WCERS's lead plaintiff application and its proposed counsel.[12]  Accordingly, WCERS should be appointed lead plaintiff.

## II. Defendants' Motion to Disqualify Should be Denied Because the Facts and Circumstances Surrounding Thornton, Kirby, and Rosenthal's Role as Co-Counsel to WCERS Do Not Support Disqualification.

The crux of Defendants' disqualification argument is that Kirby, Thornton, and Rosenthal should be disqualified because of Labaton's alleged imputed conflict arising out of its employment of Farrell.  *First*, Defendants' argument is based on the false premise that Farrell shared client confidences with Labaton or anyone else, and that he had a role in this litigation. The sworn declarations categorically reject that speculation.  *Second*, Defendants do not provide any authority to support their novel "fruit of the poisonous tree" argument (a concept arising out of the Fourth Amendment and other related areas).  *Third*, the Third Circuit has rejected a *per se* rule of double imputation among co-counsel firms.  In *Akerly*, the Third Circuit held: "This Court is urged to adopt a per se rule that if one co-counsel is disqualified for ethical reasons, all co-counsel must be barred from representation.  We decline to follow such a path.  Instead, we adhere to the mode of analysis [requiring] … a careful sifting of all of the facts and circumstances."  *Akerl*y, 551 F. 2d at 543; *Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 993 F. Supp. 241, 247, 251-52

---

[12] Defendants also cite to *City of Pontiac Gen. Emps.' Ret. Sys.* for the proposition that a presumptive lead plaintiff is rendered inadequate because they have a longstanding relationship with counsel (*i.e.*, a monitoring arrangement).  Courts have routinely rejected this type of challenge.  *See In re Ustarcom, Inc. Sec. Litig.*, 2010 WL 1945737, at *8 (N.D. Cal. May 12, 2010) (rejecting argument that plaintiff was an inadequate representative because it had a portfolio monitoring agreement with lead counsel); *In re Gen. Elec. Sec. Litig.*, 2009 WL 2259502, at *6 (S.D.N.Y. July 29, 2009) (fact that lead counsel may have performed free monitoring services for SURS did not rebut the presumption in favor of the presumptive lead plaintiff); *Plumbers & Pipefitters Nat. Pension Fund v. Burns*, 292 F.R.D. 515, 523 (N.D. Ohio 2013) ("Courts have routinely rejected attacks on the propriety of portfolio monitoring agreements such as the one between [plaintiff] and [plaintiff's counsel].").

(D.N.J. 1998) (discussing *Akerly*). Tellingly, in their motion, Defendants do not cite to a single case discussing the disqualification of a law firm based on an imputed conflict attributed to a co-counsel law firm. *See* Br. at 17-18. Defendants also fail to acknowledge the curative effect of Labaton's withdrawal. Notably, Defendants do not explain how or why any claimed conflict on the part of Labaton should be imputed to co-counsel, much less WCERS, and fail to cite *any* authority on point.

### A. There is No Conflict that May be Imputed to Thornton, Kirby, or Rosenthal Because They Had No Interaction with Farrell about this Action.

Defendants make a number of sweeping accusations, including that "[t]his action arises from one of the most egregious violations of an attorney's ethical obligations to his former clients," and that "Labaton never provided clarity into the circumstances surrounding this litigation…." Br. at 1-2. As discussed *supra*, the sworn declarations submitted by WCERS and its counsel confirm that Defendants' fears and speculation are unfounded, and that Defendants' representations in their motion are not accurate. This case originated in Labaton's *New York* office (not in its Delaware office as Defendants have theorized), *months before* Farrell joined Labaton. Farrell never had any involvement with or connection to the Action at Labaton and has disclosed his former clients' confidences to no one.

Importantly, Labaton *did* provide Defendants with clarity into the circumstances surrounding this litigation on December 11, 2018. And no one at Thornton, Kirby, or Rosenthal has ever spoken with Farrell about this Action or the Defendants, much less obtained any non-public information about any of the Defendants. It is thus ***impossible*** for any of Defendants' client

confidences to have *ever* flowed to Kirby, Thornton, or Rosenthal because the firms never spoke to Farrell and only received public information about Defendants.[13]

There is no grey area in this record suggesting there is any merit to Defendants' speculation.

### B.     The Fruit of the Poisonous Tree Doctrine is Inapplicable.

Defendants make a novel suggestion that this case is a "poisonous tree [ ] bear[ing] fruit." Br. at 8.  But Defendants do not cite any legal authority for their unprecedented argument that a Fourth Amendment "fruit of the poisonous tree" analysis somehow applies, compels, or allows disqualification of attorneys or clients who, indisputably, have not violated any ethical rule.  To the best of the undersigned's counsel's knowledge, the "fruit of the poisonous tree" is not a concept in this area of law.  *See Proctor & Gamble Co. v. Haugen*, 183 F.R.D. 571, 574 (D. Utah 1998) (denying motion to disqualify counsel).   In the context of an argument that an expert's disqualification should taint counsel, the court "reject[ed] a per se disqualification" rule and noted that the "concept of fruit of a poisoned tree is not applicable to this situation." *Id*.

Even if the fruit of the poisonous tree doctrine applied, it would not warrant disqualification here.  There is no poisonous tree here.  Defendants are unable to point to any evidence that suggests WCERS or its counsel (former or present) ever received or used any confidential information, and all of the parties involved have submitted sworn denials.

Finally, the cases Defendants cite do not support their arguments.  *See* Br. at 17-18. *Freeman v. Musk* is an unremarkable lead plaintiff order that did not address any allegation of lawyer-driven litigation; it only addressed it in *dicta*, and in a parenthetical no less.  *Freeman v.*

---

[13] This was limited to a short summary and draft of the original complaint that Thornton obtained from Labaton in August for the benefit of WCERS.  Without waiving any privileges or protections, WCERS is willing to make the summary and the draft complaint, as well as its email communications to and from Labaton, all of which are privileged and protected, available to the Court for an *in camera* review.

*Musk*, 324 F.R.D. 73, 87 (D. Del. 2018).  And *Freeman* was a shareholder derivative case, not a securities case, so the PSLRA was inapplicable (and no conflicts issues were raised).  *See id.* at 87-88.  *In re Horsehead Holding Corp. Sec. Litig.* is also inapposite: the dispute there was whether one of the lead plaintiff movants had standing; the court only quoted the PSLRA's legislative history in *dicta*, and in a footnote.  *In re Horsehead Holding Corp. Sec. Litig.*, 2017 WL 5188057, at *2 n.1 (D. Del. Nov. 9, 2017).  And in *Eon Corp. IP Holdings LLC v. Flo TV Inc.*, the court was faced with a potential conflict entirely within only one law firm; the issue of co-counsel law firms was not present. Accordingly, the case adds nothing to the analysis presented here.  *See Eon Corp. IP Holdings LLC v. Flo TV Inc.*, 2012 WL 4364244, at *1-3 (D. Del. Sept. 24, 2012).

## C.   Courts Reject a Per Se "Double Imputation" Theory of Attorney Conflict.

Defendants suggest that because Labaton allegedly had an imputed conflict by its employment of Farrell, that conflict should be doubly-imputed to its client or other counsel.  Br. at 8. The concept of "double imputation" has been rejected by courts around the country, including the Courts of Appeals for the Third, Fifth, Tenth, and Federal Circuits, district courts in Florida, New Jersey, and Pennsylvania, and the Supreme Courts of Alabama and Washington.  The court in *Essex Chemical*, discussing many of these cases, noted that "where knowledge is not actual, but imputed based on the presumption that members of a firm share confidences, automatic re-imputation of that same knowledge to another attorney with whom the vicariously disqualified attorney collaborated is unreasonable." *Essex Chem.*, 993 F. Supp. at 252.  "The common thread among the cited authorities is their requirement of a painstaking factual analysis before disqualifying an attorney given the risk of interminable disqualification posed by an imputation-on-imputation rule." *Id.*  As the Restatement (Third) Governing Lawyers observes,

> Courts generally have not imputed the disqualification of a person in one firm to lawyers in another firm, even if members of the two firms are working together, so long as there is only a small actual risk of confidential client information spreading

15

from the *primarily conflicted lawyer* to the second firm.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 123 comment (c)(iii) (2000).  Here there is *no risk* of any such eventuality, so the Court should deny Defendants' motion to disqualify.

In *Akerly*, the Third Circuit considered disqualification of plaintiff's lead counsel and co-counsel where co-counsel had previously been employed by a firm that represented a corporation related to the defendants.  *Akerly*, 551 F.2d at 543.  In upholding the district court's disqualification of co-counsel and refusal to disqualify lead counsel, the court rejected the defendants' request to adopt a *per se* rule that if one co-counsel is disqualified for ethical violations, all co-counsel must be similarly disqualified.  *Id*.  The court emphasized the need for a careful analysis of all facts and circumstances surrounding the controversy and that co-counsel was not a conduit of confidential information to lead counsel.  *Id*. at 542, 544.  Stressing co-counsel's peripheral role, the fact that the relationship between counsel was not an active one, and the district court's finding regarding the impossibility of shared confidences, the Third Circuit held that the district court did not abuse its discretion in declining to disqualify lead counsel.  *Id*.  Similar conclusions were arrived at by the Fifth, Tenth, and Federal circuit courts of appeals in *Smith v. Whatcott*, 774 F.2d 1032 (10th Cir. 1985), *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564 (Fed. Cir. 1984), and *Am. Can Co. v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir. 1971).[14]  Counsel will not burden the Court with summaries of each of these cases here because the conclusions are all the same; however, the court in *Essex Chemical* did provide a helpful analysis of many of these.  *See Essex Chem.*, 993 F.

---

[14] *See also*, *e.g.*, *Essex Chem.*, 993 F. Supp. at 241; *BayBrook Homes, Inc. v. Banyan Const. & Dev., Inc.*, 991 F. Supp. 1440 (M.D. Fla. 1997); *Realco Services, Inc. v. Holt*, 479 F. Supp. 867 (E.D. Pa. 1979); *Ex Parte Wheeler*, 978 So.2d 1 (Ala. 2007); *First Small Bus. Inv. Co. of Ca. v. Intercapital Corp. of Ore.*, 108 Wash.2d 324 (Wash. 1987). *Panduit* was disapproved of in *Richardson-Merrell, Inc. v. Koller* on other grounds, as to the appealability of orders disqualifying counsel. *See Richardson-Merrell, Inc. v. Koller* 472 U.S. 424, 432, 440-41 (1985).

Supp. at 247-250.

Even Defendants' own case law, in discussing disqualification motions generally, cautions against the knee-jerk conclusions arrived at in Defendants' motion: "Resolving the question of whether to disqualify counsel requires the Court to carefully sift all the facts and circumstances." *Eon Corp. IP Holdings LLC*, 2012 WL 4364244, at *3. Whether disqualification is appropriate "depends on the *facts* of the case and is never automatic." *Id.* Importantly, the court in *Eon* noted that it "approaches motions to disqualify counsel with cautious scrutiny, mindful of a litigant's right to the counsel of its choice." *Id.*

The sworn declarations from Farrell and Mr. Schwartz of Labaton, Mr. Grysko (on behalf of WCERS), and from attorneys at Kirby, Thornton, and Rosenthal provide this Court with a complete factual record that establishes Defendants' speculation and innuendo are without merit. These sworn declarations confirm that there is no reason to "double-impute" the alleged conflict that led to Labaton's withdrawal from this Action to Kirby, Thornton, or Rosenthal.

## D.    Defendants' Motion to Disqualify is Untimely.

While not necessarily dispositive, the timing of Defendants' motion to disqualify is highly suspicious and smacks of sharp tactics. Defendants' own authority supports this view. In *Nemours Foundation v. Gilbane, Aetna Fed. Ins. Co.*, the court noted that delay in bringing a disqualification motion may be a factor that weighs against granting the motion. *Nemours Found. v. Gilbane, Aetna Fed. Ins. Co.*, 632 F. Supp. 418, 430-31 (D. Del. 1986). While the court in *Nemours* ultimately concluded that the evidence was "not sufficient to show that delay was an intentional element," the court discussed why a delay such as this one warrants denying the relief sought:

> In addendum, the Court takes note of a factor weighing against Nemours' motion involving possible delay. Courts have been extremely reluctant to disqualify attorneys when there is a possibility that a motion was made primarily for strategic purposes in a litigation. Even when made in the best of faith, such motions inevitably cause delay. It is possible—but by no

> means proven—that counsel for Nemours knew already in April 1985 that Bradley had joined Biggs. Nemours raised this issue five months later, in September. Shortly before that, Nemours had lost a motion to compel. *Id.*

Farrell left DLA Piper and joined Labaton in July 2018 and DLA Piper was aware that Farrell was employed by Labaton shortly thereafter: he contacted DLA Piper to obtain a *publicly-available* transcript from the Chancery Court action for use in a different case. Farrell Decl. ¶8. But while this Action was filed on August 10, 2018, Defendants waited **more than three months** to raise the issue at all and **more than seven months** to file their motion to disqualify and well after the deadline for lead plaintiff motions passed last year.  As a result of Defendants' tactical timing, and undue delay, the putative Class now runs the risk of having this entire action dismissed if WCERS is barred from prosecuting this Action as lead plaintiff.  *See The Scope to the Delaware Lawyers' Rules of Prof'l Conduct*, Cmt. [20], 307 (2013) ("the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons"); *see also* American Bar Association, *Annotated Model Rules of Professional Conduct*, Comment [20], 4 (7th ed.) (same).

Furthermore, depending on when certain claims may run under applicable statutes of limitation, there is a real risk that this entire lawsuit now may be disposed of via this motion to disqualify.  This prejudice to the class further weighs against granting Defendants' motion.  Here, Defendants waited **seven months**—longer than the delay in *Nemours*, from the time that this Action was filed, and almost **four months** from the time they first spoke to Labaton to bring their motion.  This delay is highly suspicious and further supports denial of the motion.

**III.  Defendants' Request for Discovery Should be Denied as Unnecessary: the Sworn Declarations Leave no Grey Area Suggesting that Defendants' Motion has any Merit.**

Defendants argue that despite the fact that the Complaint is based entirely on public information (which Defendants concede) and Defendants have no evidence that WCERS or its

counsel (former or present) ever received or used confidential information in bringing this Action,[15] Defendants are nevertheless entitled to discovery on this issue because the timing of WCERS's filing is suspicious.  Br. at 18-19.  As shown *supra*, the timing is not the least bit suspicious and entirely consistent with the facts. To the extent Defendants argue that this Action was somehow triggered by Farrell's arrival at Labaton, there is zero evidence to support that argument.  Indeed, the *only* record evidence before the Court is that attorneys in Labaton's *New York* had initiated research on, and were developing, this case months before that, and that Farrell provided no assistance and had no involvement.  Schwartz Decl. ¶¶4-8; Farrell Decl. ¶7. Labaton advised Defendants' counsel of these facts on December 11, 2018, facts Defendants conveniently omit from their papers.

Moreover, Defendants offer no legal support for the proposition that they are entitled to discovery at this stage and, in fact, the PSLRA does not permit a defendant to take discovery at the lead plaintiff stage.  The PSLRA provides that in the limited circumstances where discovery is warranted, discovery may only be conducted "***by a plaintiff*** only if the plaintiff first demonstrates a ***reasonable basis*** for finding that the presumptively most adequate plaintiff is incapable of representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iv).  Thus, by the statute's express terms, only plaintiffs may conduct discovery at the lead plaintiff application stage, and only if these plaintiffs proffer a "reasonable basis."  Courts have made clear that discovery is not warranted at the lead plaintiff application stage absent *evidence*, not merely speculation, that the presumptively most adequate plaintiff is inadequate.  *See Bowers v. Tesaro Inc.*, 2018 WL 2089358, at *3 (D. Mass. May 4, 2018) (discovery inappropriate where competing plaintiff "lack[ed] even minimal

---

[15] The fact that attorney Farrell received *public* information from DLA Piper for use in *another* action has no possible relevance to the analysis. *See* Farrell Decl. ¶8.

evidence" to rebut the presumption that the presumptive lead plaintiff was the most adequate plaintiff).   Here, Defendants have failed to offer any evidence—instead relying on mere speculation—that WCERS is inadequate and so discovery is not warranted.   *See Emerson v. Genocea Biosciences, Inc.*, 2018 WL 839382, at *3 n.2 (D. Mass. Feb. 12, 2018) (denying opposing movant's request for discovery stating it "misinterprets the relatively low burden of proof borne by a party seeking appointment as 'most adequate plaintiff.'").[16]   Defendants cannot circumvent the PLSRA and obtain discovery at this stage simply by calling this submission a disqualification motion, rather than an effort to rebut the presumption that WCERS is the most adequate plaintiff.   Accordingly, Defendants' request for discovery should be denied.

## CONCLUSION

For these reasons, WCERS respectfully requests that the Court (1) appoint WCERS as Lead Plaintiff; (2) approve WCERS's selection of Kirby McInerney LLP and Thornton Law Firm LLP as Co-Lead Counsel for the Class and Rosenthal, Monhait & Goddess, P.A. as Liaison Counsel for the Class; (3) deny Defendants' motion to disqualify; (4) deny Defendants' improper request for discovery; and (5) such other and further relief as the Court may deem just and proper.


Dated: April 5, 2019                                         **ROSENTHAL, MONHAIT & GODDESS, P.A.**


                                                             */s/ P. Bradford deLeeuw*
                                                             Jessica Zeldin (Del. Bar No. 3558)
                                                             P. Bradford deLeeuw (Del. Bar No. 3569)
                                                             919 N. Market Street, Suite 1401
                                                             P. O. Box 1070

---

[16] *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 539 (S.D.N.Y. 2015) (denying request for discovery where co-lead plaintiffs "made the requisite preliminary showings of adequacy to be co-lead plaintiffs"); *Waterford Township Police v. Mattel, Inc.*, 2017 WL 10667732, at *7-8 (C.D. Cal. Sept. 29, 2017) ( "Courts are to take care to prevent the use of discovery to presumptive lead plaintiffs, something the [PSLRA] was meant to guard against" and denying request for discovery).

OF COUNSEL:

**KIRBY MCINERNEY LLP**
Peter S. Linden (*pro hac vice*)
Ira M. Press (*pro hac vice*)
825 Third Avenue
New York, New York 10022
(212) 371-6600


**THORNTON LAW FIRM LLP**
Guillaume Buell (*pro hac vice*)
1 Lincoln Street
Boston, Massachusetts 02111
Tel.: (617) 720-1333
Email: gbuell@tenlaw.com

*Counsel for Plaintiff Wayne
County Employees' Retirement
System and Proposed Co-Lead
Counsel for the Class*

Wilmington, Delaware 19899-1070
(302) 656-4433

*Liaison Counsel for Plaintiff Wayne County
Employees' Retirement System and Proposed
Liaison Counsel for the Class*