IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MAVENIR, INC. F/K/A XURA, INC., PHILIPPE TARTAVULL, HENRY R. NOTHHAFT, SUSAN D. BOWICK, JAMES BUDGE, NICCOLO DE MASI, MATTHEW A. DRAPKIN, DORON INBAR, and MARK C. TERRELL,<br><br>Defendants. | Civil Action No. 18-1229-CFC-SRF |

**MEMORANDUM OPINION**

## I. INTRODUCTION

Presently before the court in this putative class action alleging violations of the Securities Exchange Act of 1934 are cross-motions by the parties, wherein plaintiff Wayne County Employees' Retirement System ("Wayne County") has moved for appointment as lead plaintiff and approval of its selection of lead counsel, and defendants have moved to disqualify plaintiff's counsel.[1] (D.I. 28; D.I. 33) The moving defendants are as follows: Mavenir, Inc. ("Mavenir"), Philippe Tartavull ("Tartavull"), Henry R. Nothhaft ("Nothhaft"), Susan D. Bowick ("Bowick"), James Budge ("Budge"), Niccolo de Masi ("de Masi"), Doron Inbar ("Inbar"), and Mark C. Terrell ("Terrell") (collectively, "defendants").[2] For the following reasons, plaintiff's motion for

---

[1] The briefing for the present motions is as follows: plaintiff's opening brief in support of its motion (D.I. 29), defendants' combined opening brief in support of their motion and answering brief (D.I. 34), and plaintiff's reply brief (D.I. 40).
[2] Defendant Matthew A. Drapkin ("Mr. Drapkin") is separately represented. (D.I. 34 at 1 n.1) Mr. Drapkin was a Xura director. (D.I. 1 at ¶ 18) Mr. Drapkin separately filed his opposition to

appointment as lead plaintiff and approval of its selection of lead counsel is GRANTED and defendants' motion to disqualify plaintiff's counsel is DENIED.

## II. BACKGROUND

### a. The Parties

Wayne County was a Xura, Inc. ("Xura")[3] shareholder. (D.I. 1 at ¶ 11) Mavenir is a corporation formerly known as Xura. (*Id.* at ¶ 12) Tartavull was a Xura director, President, and CEO. (*Id.* at ¶ 13) Nothhaft was a Xura director that served as Chairman of the Board. (*Id.* at ¶ 14) Bowick, Budge, de Masi, Inbar, and Terrell were Xura directors. (*Id.* at ¶¶ 15-17, 19-20)

### b. Facts

On May 23, 2016, Xura's Board of Directors entered into an agreement and plan of merger (the "Merger Agreement"), wherein Xura shareholders received $25 per share.[4] (*Id.* at ¶¶ 1, 3) Defendants issued a Preliminary Proxy Statement on June 28, 2016 and a Final Proxy Statement on July 12, 2016 (collectively, the "Proxy"). (*Id.* at ¶ 4) On July 26, 2016, defendants issued a supplemental Proxy Statement (the "Supplemental Proxy"). (*Id.*) The merger was approved by Xura shareholders on August 16, 2016 and closed on August 19, 2016. (*Id.* at ¶ 3) Plaintiff alleges that the Proxy and Supplemental Proxy contained materially incomplete and misleading disclosures. (*Id.* at ¶¶ 4-5)

Attorney Derrick Farrell ("Mr. Farrell") formerly practiced with the firm of DLA Piper LLP (US) ("DLA Piper"), where he served as counsel to defendants Mavenir, Tartavull,

---

Wayne County's motion for appointment as lead plaintiff and approval of its selection of lead counsel. (D.I. 36) Mr. Drapkin does not join in defendants' motion to disqualify counsel.
[3] Xura was a Delaware corporation with its principal executive offices in Wakefield, Massachusetts. (D.I. 1 at ¶ 12)
[4] It is alleged in this case that the consideration is substantially less than the fair value of such shares. (D.I. 1 at ¶ 7)

Nothhaft, and Budge in prior related actions before the Delaware Chancery Court.[5] (D.I. 34 at 4; D.I. 35 at ¶ 4) He served as the lead non-partner attorney in the Chancery Court actions. (D.I. 34 at 1) He subsequently joined the firm of Labaton Sucharow LLP ("Labaton") on July 13, 2018. (D.I. 35 at ¶ 8) Labaton filed this action on behalf of Wayne County on August 10, 2018. (D.I. 1) Defendants assert that Mr. Farrell has a conflict of interest which is imputed to Labaton and law firms subsequently retained by the plaintiff in the instant case. Therefore, defendants oppose the motion for appointment of lead plaintiff and approval of plaintiff's lead counsel and move to disqualify plaintiff's counsel.

### c. Procedural History

On August 10, 2018, plaintiff originally filed this putative class action, alleging violations of the Securities Exchange Act of 1934. (D.I. 1) *See also* 15 U.S.C. § 78a *et seq.* On August 13, 2018, Wayne County published notice, alerting investors that the deadline for class members to move for lead plaintiff was October 12, 2018. (D.I. 30, Ex. A) On October 12, 2018, Utah Retirement Systems ("URS") filed a motion for appointment as lead plaintiff and approval of its selection of counsel. (D.I. 7) URS subsequently withdrew its motion on January 29, 2019.[6] (D.I. 22) On February 15, 2019, Wayne County filed the instant motion for appointment as lead plaintiff and approval of its selection of counsel. (D.I. 28) On March 15, 2019, defendants filed their present motion to disqualify counsel. (D.I. 33)

---

[5] The related actions seeking appraisal and claiming breaches of defendants' fiduciary duties have since been consolidated and re-captioned as *In re Xura, Inc. Stockholder Litig.*, C.A. No. 12698-VCS ("*In re Xura*"). (D.I. 34 at 1-2 & n.2) Another putative class action based on the same facts was consolidated into *In re Xura* on March 7, 2019. (*Id.*)

[6] URS sought approval of its selection of Labaton as lead counsel for the putative class. (D.I. 7) Labaton had filed this action on behalf of Wayne County. (D.I. 1)

3

## III. LEGAL STANDARD

### a. Appointment of Lead Plaintiff

Both the selection of a lead plaintiff, or the "most adequate plaintiff," and the approval of a lead plaintiff's choice of lead counsel is "committed to the court's discretion." *Dutton v. Harris Stratex Networks, Inc.*, C.A. No. 08-755-JJF, 2009 WL 1598408, at *2 (D. Del. June 5, 2009) (quoting *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005)). Despite having this discretion, the court nevertheless must follow the procedures established in the Private Securities Litigation Reform Act (the "PSLRA"). *See id.*; 15 U.S.C. § 78u-4. Under the PSLRA, determining which movant qualifies as the lead plaintiff is a two-step process. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *City of Roseville Employees' Ret. Sys. v. Horizon Lines Inc.*, C.A. No. 08-969, 2009 WL 1811067, at *1 (D. Del. June 18, 2009); *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 399 (D. Del. 2014).

First, the court must identify the presumptive lead plaintiff. *See Cendant*, 264 F.3d at 262-63; *Vandevelde v. China Nat. Gas, Inc.*, 277 F.R.D. 126, 131 (D. Del. 2011). Under the PSLRA, the presumptive lead plaintiff is the person or group that (1) "has either filed the complaint or made a motion in response to a notice," (2) "in the determination of the court, has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(i) & (iii)(I); *see also City of Roseville*, 2009 WL 1811067, at *1.

Second, the court must determine whether the presumption has been rebutted. *See Cendant*, 264 F.3d at 268; *Vandevelde*, 277 F.R.D. at 131. The presumption may be rebutted "only upon proof by a member of the purported plaintiff class" that the presumptive lead plaintiff

4

"will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb); *see also Cendant*, 264 F.3d at 268.

Once the most adequate plaintiff is determined by the court, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also OFI Risk Arbitrages*, 63 F. Supp. 3d at 399.

## IV. DISCUSSION

### a. Appointment as Lead Plaintiff

#### i. Requirements under the PSLRA

The first element in creating a rebuttable presumption under the PSLRA is filing the complaint. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). Wayne County filed the complaint in this action on August 10, 2018.[7] (D.I. 1) Defendants do not contest the second element under the PSLRA, that Wayne County has the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). (*See also* D.I. 34 at 13; D.I. 29 at 7) Therefore, the court analyzes the third element under the PSLRA: the typicality and adequacy requirements of Fed. R. Civ. P. 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); Fed. R. Civ. P. 23(a)(3)-(4); *Cendant*, 264 F.3d at 263-65.

---

[7] The PSLRA also requires a plaintiff who files a class action under the Exchange Act to "[n]ot later than 20 days after the date on which the complaint is filed . . . cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class of the pendency of the action, the claims asserted therein, and the purported class period." 15 U.S.C. § 78u-4(a)(3)(A)(i)(I). Wayne County published notice with Globe Newswire on August 13, 2018. (D.I. 29 at 6 n.5; D.I. 30, Ex. A)

### ii. Typicality

"The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals. However, typicality . . . does not require that all putative class members share identical claims." *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. at 152 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531-32 (3d Cir. 2004)). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992) (quoting *Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123, 130 (3d Cir. 1987)). "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).

Defendants argue that Wayne County's legal strategies and legal theories are distinct from the class because of confidential client information likely improperly disclosed to the Labaton firm arising from Mr. Farrell's conflict of interest. (D.I. 34 at 13-14) Furthermore, defendants contend that Wayne County is subject to unique legal defenses due to Mr. Farrell's conflict. (*Id.* at 14) Therefore, defendants conclude, Wayne County fails to meet the typicality prong. Defendants do not specify what is meant by "unique" legal defenses and provide no facts or legal authority to support this argument. Defendants rely upon speculation, characterizing the timing of this action's filing as "highly suspicious." (*Id.* at 5) Defendants point to Labaton's filing of this action weeks after Mr. Farrell joined the firm despite publicly available information being released months beforehand. (*Id.*) However, beyond allegations of suspicious timing,

6

defendants do not specify anything "suspicious" in the complaint itself that would have been learned outside of publicly available information.

Because at this juncture the court's initial inquiry into whether Wayne County satisfies the typicality and adequacy requirements "need not be extensive," the court finds that Wayne County has the same interests and shares the same legal theories as the rest of the class. *Cendant*, 264 F.3d at 264. Both Wayne County and the class allege that defendants violated the Exchange Act by failing to disclose material facts about their business dealings and providing misleading disclosures in the proxy materials, which resulted in economic loss. (D.I. 1 at ¶¶ 58-66) Wayne County's circumstances are not "markedly different" from the claims of the class. *See City of Roseville*, C.A. No. 08-969, 2009 WL 1811067, at *2. Therefore, Wayne County satisfies the *prima facie* showing of typicality.

### iii. Adequacy

"The adequacy determination is made in context with the movant's choice of lead counsel." *In re Vicuron Pharms., Inc. Secs. Litig.*, 225 F.R.D. at 511 (citation omitted). The adequacy requirement "mandates that a representative party be able to 'fairly and adequately protect the interests of the class.'" *Cendant*, 264 F.3d at 263 (quoting Fed. R. Civ. P. 23(a)(4)). For adequacy, "courts should consider whether [the movant] 'has the ability and incentive to represent the claims of the class vigorously, [whether the movant] has obtained inadequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'" *Id.* (quoting *Hassine*, 846 F.2d at 179).

Defendants argue that Wayne County's representation of the class flows from an irreconcilable conflict and is predicated on the improper use of defendants' confidential client information. (D.I. 34 at 5) Therefore, defendants conclude that the adequacy prong is not met.

7

However, defendants provide no facts or legal authority in support of their argument. Defendants have not provided examples of disclosures of alleged confidential information relied upon by Wayne County and their counsel in drafting the pleadings. The only support cited for defendants' argument is the alleged "suspicious" timing of the filing of the pending suit shortly after attorney Farrell switched firms.

Wayne County satisfies the adequacy requirement because it has chosen firms with adequate credentials. *See Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975) ("the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation . . ."). Furthermore, there is no evidence in the record of intra-class conflicts such that Wayne County is unable to vigorously represent the claims of the class. *See Cendant*, 264 F.3d at 265; *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996).

Because Wayne County filed the complaint, has the largest financial interest in the outcome, and satisfies the *prima facie* showing of typicality and adequacy, it has satisfied the requirements of the presumptive lead plaintiff. Per the PSLRA, the court will move to the second step in the analysis and consider whether defendants can successfully rebut the presumption.

### iv. Rebutting the Presumption

Pursuant to the PSLRA, the court's presumption as to lead plaintiff may be "rebutted only upon proof *by a member of the purported plaintiff class* that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb) (emphasis added).

Defendants argue that Wayne County fails to meet the typicality and adequacy requirements because of Mr. Farrell's conflict, but provide no facts or legal authority to support this argument. Instead, defendants concede that the complaint references information that was publicly available based on Chancery Court filings. (D.I. 34 at 2, 5-6, 11) Defendants rely upon the same arguments to rebut the presumption of lead plaintiff and to support their motion to disqualify.

Wayne County argues that defendants lack standing to rebut the presumption. (D.I. 40 at 5-8) The Third Circuit in *Cendant* noted that the PSLRA's language makes clear that "only class members may seek to rebut the presumption, and the court should not permit or consider any arguments by defendants or non-class members." *Cendant*, 264 F.3d at 268; *see also In re Herley Indust. Inc.*, 2010 WL 176869, at *2 (E.D. Pa. Jan. 15, 2010) ("At the initial appointment stage, defendants are prohibited from challenging the appointment of a lead plaintiff because the PSLRA allows input only from "member[s] of the purported plaintiff class."). As such, the court cannot consider defendants' arguments to rebut the presumption. Furthermore, "[d]iscovery on this issue is permissible only if the *challenging plaintiff* demonstrates a reasonable basis for finding that the presumptively most adequate plaintiff is incapable of adequate representation." *EZRA Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 440 (W.D. Pa. 2001) (emphasis added); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iv). "If no class member succeeds in rebutting the presumption, then the district court should appoint the presumptive lead plaintiff as the lead plaintiff." *Cendant*, 264 F.3d at 268. The presumption of lead plaintiff has not been rebutted. Therefore, Wayne County's motion for appointment as lead plaintiff is granted.

### b. Approval of Lead Counsel

The PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *Cendant*, 264 F.3d at 276. The court's inquiry is limited to "whether the lead plaintiff's selection and agreement with counsel are reasonable on their own terms." *Id.* In making this determination, the court should consider:

> (1) the quantum of legal experience and sophistication possessed by the lead plaintiff; (2) the manner in which the lead plaintiff chose what law firms to consider; (3) the process by which the lead plaintiff selected its final choice; (4) the qualifications and experience of counsel selected by the lead plaintiff; and (5) the evidence that the retainer agreement negotiated by the lead plaintiff was (or was not) the product of serious negotiations between the lead plaintiff and the prospective lead counsel.

*Id.*

Wayne County has selected Kirby McInerney LLP and Thornton Law Firm as co-lead counsel and Rosenthal, Monhait & Goddess, P.A. as liaison counsel (collectively, "present counsel"). (D.I. 29 at 10-11) Kirby McInerney LLP and Thornton Law Firm have significant experience with securities litigation and class actions, having litigated many such cases in federal courts throughout the country. (D.I. 29 at 10; D.I. 30, Ex. B) There is no dispute that Rosenthal, Monhait & Goddess, P.A. has the requisite experience to serve in the largely administrative role of Liaison Counsel. (D.I. 30, Ex. B) *See KBC Asset Mgmt. NV ex rel. Chemed Corp. v. McNamara*, 78 F. Supp. 3d 599, 607 n.8 (D. Del. 2015). Moreover, defendants are not in a position to challenge any issues pertaining to negotiations or a retainer agreement.

Defendants argue that following Mr. Farrell's association with Labaton, DLA Piper did not receive any notice of screening efforts or certification of compliance with Model Rule of Professional Conduct 1.10.[8] (D.I. 35 at ¶¶ 8-9) Defendants believe that Labaton's filing of this suit is suspicious because the case was filed shortly after Mr. Farrell joined Labaton. (D.I. 34 at 5) Defendants contend that Mr. Farrell's conflict arising from his former representation of certain defendants was imputed to Labaton, and then imputed to present counsel. Counsel from Kirby McInerney LLP and Thornton Law Firm filed their motion for *pro hac vice* appearance on February 7, 2019. (D.I. 24) Rosenthal, Monhait & Goddess, P.A. was not contacted until on or about February 6, 2019 regarding possible representation of Wayne County, and entered its appearance on February 8, 2019, the same day that Labaton withdrew its representation. (D.I. 41 at ¶ 2; D.I. 27) Wayne County has submitted declarations, wherein present counsel represent that they did not receive any non-public information regarding the defendants from Labaton, Mr. Farrell, or any other source. (D.I. 41 at ¶¶ 2-4; Ex. B at ¶¶ 3-4; Ex. C at ¶¶ 2-4) Defendants do not identify any allegations in the complaint that could not have been known to plaintiff's counsel but for improper disclosure of defendants' confidential client information.

---

[8] Model Rule of Professional Conduct 1.10 states that: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless . . . the prohibition is based upon Rule 1.9(a) or (b), and arises out of the disqualified lawyer's association with a prior firm, and (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; (ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and (iii) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures." MODEL RULES OF PROF'L CONDUCT r. 1.10(a)(2) (AM. BAR ASS'N).

Plaintiff argues that defendants lack standing to challenge its selection of counsel.[9] (D.I. 40 at 6 n.6) Although defendants cite *In re Merck & Co., Inc. Sec. Litig.* to argue that they have standing, this case is inapposite. (D.I. 34 at 18 n.10) In *In re Merck*, plaintiff retained counsel without court approval after a notice of appeal was filed. *See In re Merck*, 432 F.3d 261, 266 (3d Cir. 2005). The Third Circuit noted that the majority of courts have denied defendants the right to challenge the adequacy of a lead plaintiff's chosen counsel, but concluded that "[w]hen the challenge is not to adequacy but is, as here, to a lead plaintiff's procedural failure to secure court approval, we hold that defendants do have standing to challenge the retention of lead counsel." *Id.* at 267. Here, defendants do not argue a procedural deficiency, but argue an ethical deficiency that they wish to impute to plaintiff's present counsel. Furthermore, "courts are generally skeptical of defendants' ethical attacks on class counsel." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 47 (S.D.N.Y. 2012); *see also Bank v. Electronic Payment Services, Inc.*, C.A. No. 95-614-SLR, 1997 WL 811552, at *19 n.17 (D. Del. Dec. 30, 1997). Therefore, defendants' motion to disqualify counsel is denied.

### c. Fruit of the Poisonous Tree

Defendants argue in opposition to Wayne County's motion and in support of their disqualification motion that confidential information improperly disclosed to present counsel for Wayne County is "fruit from the poisonous tree."[10] (D.I. 34 at 17) Defendants argue that Mr.

---

[9] Plaintiff also suggests that defendants' motion to disqualify counsel is untimely, which weighs in favor of dying the motion. (D.I. 40 at 17-18) Defendants waited more than seven months to file the present motion. Such a delay weighs against defendants' motion. *See Nemours Foundation v. Gilbane, Aetna Fed. Ins. Co.*, 632 F. Supp. 418, 430-31 (D. Del. 1986) (concluding that a delay of five months weighs against a motion to disqualify attorneys).

[10] Within the criminal context, "[i]t is axiomatic that evidence obtained as a result of a Fourth Amendment violation ordinarily must be suppressed as 'fruit of the poisonous tree.'" *U.S. v. Dupree*, 617 F.3d 724 (3d Cir. 2010) (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)).

Farrell's alleged conflict of interest was imputed to Labaton, which was in turn imputed to Wayne County's present counsel. (*Id.*) Therefore, defendants conclude, this is the type of "lawyer-driven" litigation that the PSLRA seeks to avoid. (*Id.*) *See also In re Horsehead Hldg. Corp. Sec. Litig.*, 2017 WL 5188057, at *2 (D. Del. Nov. 9, 2017). However, defendants have not provided any legal authority to support their contention that the "fruit of the poisonous tree" doctrine applies within this context. *See Proctor & Gamble Co. v. Haugen*, 183 F.R.D. 571, 576 (D. Utah 1998) ("A concept of fruit of a poisoned tree is not applicable in [the context of disqualification of counsel]."). The "fruit of the poisonous tree" doctrine has not been applied in the civil context.

Even assuming, *arguendo*, that defendants have standing to challenge Wayne County's selection of counsel, the Third Circuit has rejected a per se rule of double imputation in *Akerly v. Red Barn System, Inc.*, 551 F.2d 539, 544-45 (3d Cir. 1977) ("This Court is urged to adopt a per se rule that if one co-counsel is disqualified for ethical reasons, all co-counsel must be barred from representation. We decline to follow such a path."). Courts should carefully review the facts to determine:

> (1) [W]hat, if any, confidences were actually shared between the tainted attorney and the attorney sought to be disqualified, where the tainted attorney did not represent the former client in question and (2) the nature of the relationship between the tainted attorney and the attorney sought to be disqualified.

*Essex Chem. Corp.*, 993 F. Supp. at 251-52. Defendants have not provided any evidence that Mr. Farrell shared any confidences with Wayne County's present counsel. Instead, defendants concede that the complaint was premised on publicly available information from Chancery Court filings. (D.I. 34 at 2, 5-6, 11) Furthermore, present counsel has submitted that they did not receive any non-public information concerning defendants from Labaton, Mr. Farrell, or any other source. (D.I. 41 at ¶¶ 2-4; Ex. B at ¶¶ 3-4; Ex. C at ¶¶ 2-4) As the Third Circuit noted in

13

*Cendant*, "[a]llegations of impropriety are not wrongdoing. If they were, then any class member (or lawyer seeking to be appointed lead counsel) could disable any presumptive lead plaintiff by making unsupported allegations of impropriety." *Cendant*, 264 F.3d at 270.

Therefore, the court rejects defendants' argument on this point.

### d. Discovery

Although defendants argue that this action cannot proceed without discovery into the alleged conflicts at issue, defendants have not cited any authority supporting any reason that discovery would affect the outcome of the pending motions. (D.I. 34 at 18-19) Defendants acknowledge that the operative complaint is based on publicly available information. (D.I. 34 at 2, 5-6, 11) Other than the timing of the filing of the complaint, defendants cannot point to any suggestion that improper disclosures of confidential information have been made. Furthermore, at this stage, discovery may be conducted "by a *plaintiff* only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv) (emphasis added). Defendants suggest that the court conduct an independent inquiry into the satisfaction of Rule 23. Defendants cite no legal authority to support this argument. Therefore, the court denies defendants' motion to conduct discovery regarding plaintiff's counsel's alleged conflict of interest.

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion for appointment as lead plaintiff and approval of its selection of counsel is granted and defendants' motion to disqualify counsel is denied. (C.A. No. 18-1229, D.I. 28; D.I. 33) An Order consistent with this Memorandum Opinion shall issue.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Opinion. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: August 1, 2019

Sherry R. Fallon
United States Magistrate Judge